**UNITED STATES of America,**
**Plaintiff,**

v.

**Charles A. DAVIO and Catherine Davio, his wife, and George S. Davio and Gladys Davio, his wife, jointly and severally, Defendants.**

**Civ. A. No. 10707.**

United States District Court
E. D. Michigan, S. D.

Dec. 30, 1955.

Fred W. Kaess, U. S. Atty. and Willis Ward, Asst. U. S. Atty., Detroit, Mich., for plaintiff.

Thomas Giles Kavanagh, Jr., Detroit, Mich., for defendants.

LEVIN, District Judge.

The United States of America filed this action for damages against defendants under the Act of March 8, 1946, c. 80, § 1, 60 Stat. 37, 41 U.S.C.A. § 51, commonly known as The Anti-Kickback Act.[1]

1. "§ 51. Fees or kick-backs by subcontractors on cost-plus-a-fixed-fee or cost reimbursable contracts; recovery by United States; conclusive presumptions; withholding of payments

"The payment of any fee, commission, or compensation of any kind or the granting of any gift or gratuity of any kind, either directly or indirectly, by or on behalf of a subcontractor, as defined in section 52 of this title, (1) to any officer, partner, employee, or agent of a prime contractor holding a contract entered into by any department, agency, or establishment of the United States for the furnishing of supplies, materials, equipment or services of any kind whatsoever, on a cost-plus-a-fixed-fee or other cost reimbursable basis; or to any such prime contractor or (2) to any officer, partner, employee, or agent of a higher tier subcontractor holding a subcontract under the prime contract, or to any such subcontractor either as an inducement for the award of a subcontract or order from the prime contractor or any subcontractor, or as an acknowledgment of a subcontract or order previously awarded, is hereby prohibited. The amount of any such fee, commission, or compensation or the cost or expense of any such gratuity or gift, whether heretofore or hereafter paid or incurred by the subcontractor, shall not be charged, either directly or indirectly, as a part of the contract price charged by the subcontractor to the prime contractor or higher tier subcontractor. The amount of any such fee, cost, or expense shall be recoverable on behalf of the United States from the subcontractor or the recipient thereof by set-off of moneys otherwise owing to the subcontractor either directly by the United States, or by a prime contractor under any cost-plus-a-fixed-fee or cost reimbursable contract, or by an action in an appropriate court of the United States. Upon a showing that a subcontractor paid fees, commissions, or compensation or granted gifts or gratuities to an officer, partner, employee, or agent of a prime contractor or of another higher tier subcontractor, in connection with the award of a subcontract or order thereunder, it shall be conclusively presumed that the cost of such expense was included in the price of the subcontract or order and ultimately borne by the United States. Upon the direction of the contracting department or agency or of the General Accounting Office, the prime contractor shall withhold from sums otherwise due a subcontractor any amount reported to have been found to have been paid by a subcontractor as a fee, commission, or compensation or as a gift or gratuity to an

The undisputed facts disclose that during the years 1944–45, one August Brune was supervisor of the reproduction department of the Fisher Body Division of the General Motors Corporation employed in Michigan. During that time, Fisher Body was the major subcontractor under North American Aviation, Inc. of Kansas, a prime contractor with a cost-plus-a-fixed-fee contract with the United States Army Air Force. Brune, as supervisor of the reproduction department of Fisher Body, had the authority to award subcontracts for the making of blueprints to lower tier subcontractors. He did not establish the contract price, but merely awarded these subcontracts, at a price predetermined by his superiors, to subcontractors who had the available time and facilities for the making of the blueprints. Brune was also limited in his choice to a list of qualified subcontractors prepared by his superiors.

The defendants, doing business as The Wolverine Blueprint Company, had previously been engaged in blueprint subcontract work for Fisher Body. Having failed to receive additional subcontracts from Fisher Body, defendants communicated with Brune who informed them that they would not receive any more orders for blueprints unless they shared their profits from the subcontracts with him. The defendants agreed to share their profits with Brune and thereafter they again received subcontracts for blueprints from Fisher Body.

During the years 1944–45, defendants paid Brune $27,425, based upon 20% of the contract price, as his agreed share of their profits. The evidence shows that defendants did not charge Fisher Body any more for the blueprints after they began paying these kickbacks than they had charged under prior subcontracts where apparently no kickbacks were involved. There is no evidence that Brune's superiors participated in any way in these kickback transactions.

The Government seeks to recover from the defendants, pursuant to the above Act, these commissions or kickbacks paid to Brune.

■ There is insufficient evidence to support a finding that Catherine Davio, the wife of Charles A. Davio, and Gladys Davio, the wife of George S. Davio, were partners with their husbands in the business, and the complaint may be dismissed as to them.

■ Defendants' contention that the present action by the Government is barred by the provisions of 28 U.S.C. § 2462 (1952)[2] is without merit. That statute prescribes a five-year period within which an action for enforcement of a "civil fine, penalty, or forfeiture" must be instituted. It has no application to cases wherein the Government is seeking to recover civil damages and is not attempting to apply a penalty. See United States v. Fontenot, D.C., 33 F.Supp. 629; cf. Meeker & Co. v. Lehigh Valley R. Co., 236 U.S. 412, 35 S.Ct. 328, 59 L.Ed. 644; Keen v. Mid-Continent Petroleum Corporation, D.C., 58 F.Supp. 915.

■ In the present case, the extent of these civil damages is limited to the total amount of the kickbacks the defendants paid Brune. The legislative history of the Anti-Kickback Act clearly indicates that the amounts recoverable pursuant to the Act are for civil damages. S.Rep. No. 177, 79th Cong., 1st Sess. (1945); H.R.Rep. No. 212,

officer, partner, employee, or agent of the prime contractor or another higher tier subcontractor. Mar. 8, 1946, c. 80, § 1, 60 Stat. 37."

2. "§ 2462. Time for commencing proceedings
 "Except as otherwise provided by Act of Congress, an action, suit or proceeding for the enforcement of any civil fine, penalty, or forfeiture, pecuniary or otherwise, shall not be entertained unless commenced within five years from the date when the claim first accrued if, within the same period, the offender or the property is found within the United States in order that proper service may be made thereon. June 25, 1948, c. 646, 62 Stat. 974."

79th Cong., 1st Sess. (1945). It is within the province of Congress to provide for the recovery of civil damages, United States v. Weaver, 5 Cir., 207 F.2d 796, for the United States may protect its interests by means other than penal sanctions. Cotton v. United States, 11 How. 229, 231, 13 L.Ed. 675. The general rule is that statutes of limitations do not ordinarily run against the United States. Guaranty Trust Co. of New York v. United States, 304 U.S. 126, 132, 58 S.Ct. 785, 82 L.Ed. 1224. Thus, 28 U.S.C. § 2462 is an exception that is to be strictly construed. United States v. Weaver, supra.

Defendants' prime contention is that The Anti-Kickback Act is not intended to have retrospective effect and, therefore, the Act cannot serve as the basis for the Government's action to recover the kickbacks paid by defendants to Brune during 1944–45 prior to its enactment in 1946.

 There is a presumption that statutes promulgating substantive law are to be construed and applied prospectively unless a contrary intent is manifested in clear and unambiguous terms. Shwab v. Doyle, 258 U.S. 529, 42 S.Ct. 391, 66 L.Ed. 747; Hiatt v. Hilliard, 5 Cir., 180 F.2d 453. However, contrary to defendants' contention, the words of this statute unequivocally evidence the intent of Congress that the statute shall operate retrospectively. The second sentence of Section 1 provides that: "The amount of any such fee * * *, whether heretofore or hereafter paid or incurred * * * shall not be charged * * *." The meaning of the words "heretofore or hereafter" are unmistakable. They clearly provide for retrospective, as well as prospective, operation of the statute.

The defendants argue that if the Act operates retrospectively it is unconstitutional because it deprives them of vested property rights contrary to the due process clause of the Fifth Amendment of the United States Constitution, and is in effect an *ex post facto* law.

At the time the Act became effective, the defendants had no vested, constitutional right to withhold from the Government, and retain for themselves property to which the Government was entitled by virtue of the public policy of the Nation, and the application of well-known common law principles.

█ It has long been held that contracts for the payment of commissions for securing Government contracts or congressional favors which have a tendency to corrupt are void as against public policy. Hazelton v. Scheckels, 202 U.S. 71, 26 S.Ct. 567, 50 L.Ed. 939; Crocker v. United States, 240 U.S. 74, 36 S.Ct. 245, 60 L.Ed. 533; Tool Co. v. Norris, 2 Wall. 45, 17 L.Ed. 868. The kickbacks paid to Brune definitely had a tendency to corrupt him for the continued awarding of blueprint orders to the defendants was conditioned upon the payment of kickbacks to him and did influence his choice of subcontractors.

As early as 1941, the payment of kickbacks in many if not all types of war subcontracts was explicitly prohibited as against public policy. See Executive Order No. 9001, 6 F.R. 6787, December 27, 1941, as amended by Executive Order No. 9296, 8 F.R. 1429, Jan. 30, 1943, eff. as of December 27, 1941, 50 U.S.C.A.Appendix, § 611 note. Also see 10 C.F.R. § 811.1181 (1944 Supp.) for a war department regulation suggesting the need of eliminating kickbacks in war subcontracts. In addition, the payments in this case were made in the State of Michigan, which had announced its public policy with respect thereto by enacting a statute denouncing them as a misdemeanor. P.A.1931, No. 328, § 125, C.L.1948, § 750, Mich. Stat.Ann. § 28.320.

█ Out of an abundance of caution, and perhaps because it was doubtful of the efficacy of other remedies,[3]

---

3. The reports of the Senate and House Committees on Expenditures in the Executive Departments on the Anti-Kick-back Act contain the following explanation of its purpose:
 " * * * Section 1 of the bill would

Congress passed the Anti-Kickback Act, 41 U.S.C.A. § 51 et seq., but recovery of the kickbacks is not dependent upon the validity or invalidity of the Act or any of its provisions.

At common law an agent acts in a fiduciary relationship towards his principal, 2 Restatement, Agency § 387 (1933), and any profits, commissions or fees which he receives through his capacity as an agent belong to the principal and may be recovered by the principal, regardless of the fact that the principal may or may not have suffered any pecuniary damages as a result of his agent's secret profits. City of Findlay v. Pertz, 6 Cir., 66 F. 427; 2 Restatement, Agency §§ 388, 403 (1933). The principal may rescind the contract under such circumstances or he may affirm it and recover his pecuniary damages resulting from the surreptitious dealings between the agent and the third person. 2 Restatement, Agency §§ 312, 313(1).

English courts have permitted principals to recover from third parties any liquidated sums paid by such parties to the principal's agents as commissions or kickbacks as part of a commercial transaction, even in the absence of pecuniary damages to the principal, on the theory that the commissions represent a loaded price, and that the third party would have sold the goods or services involved at a price less the amount of the bribe. Mayor etc. of Salford v. Lever (C.A.1891), 63 L.T.R.(N.S.) 658; Grant v. Gold Exploration & Development Syndicate, Ltd. (C.A.1900), 82 L.T.R.(N.S.) 5; Hovenden and Sons v. Milhoff (C.A.1900), 83 L.T.R.(N.S.) 41; Industries & General Mortgage Co., Ltd. v. Lewis (1949 K.B.), 2 All E.R. 573. This view has been followed in this

country. Donemar, Inc., v. Molloy, 252 N.Y. 330, 169 N.E. 610. But see Kuntz v. Tonnele, 80 N.J.Eq. 373, 84 A. 624.

Fraudulent conduct, to the detriment of the principal, in such case is presumed. This rule was long ago recognized in England. E. g., Mayor etc. of Salford v. Lever, supra. In addition, the English courts have conclusively presumed that the prices are loaded in secret commission cases, even if the price paid is the market price. E. g., Industries & General Mortgage Co., Ltd. v. Lewis, supra. Thus, the Government has a common law right of action for recovery of the kickbacks paid by defendants irrespective of the fact that there was no proof that Fisher Body, Brune's principal, or the Government, as the ultimate beneficiary of the subcontract between Fisher Body and the defendants, suffered any pecuniary damages as a result of the kickbacks.

In addition, it should be pointed out that the Government bears all allowable costs in a cost-plus-a-fixed-fee contract. See Miller, Pricing of Military Procurements, 120–161 at 124–133 (1949); Braucher and Hardee, Cost-Reimbursement Contracts With the United States, 5 Stan.L.Rev. 4 at 8–9 (1952). Since North American Aviation was the prime contractor for the Government under a cost-plus-a-fixed-fee contract, the price of the blueprints involved in this case may very well have been an item of cost to North American Aviation which the Government had to bear. See, Note, Determination of Cost in Military Procurement Cost-Plus-a-Fixed-Fee Contract, 65 Harv.L.Rev. 1035 (1952).

This was thoroughly understood by Congress. In discussing the Anti-Kickback Act it was said:

prohibit the granting of such fees, gratuities, etc., and would authorize the recovery thereof by the United States by withholding amounts otherwise due the subcontractor who pays such fees or gratuities, or the recipient thereof, either directly by the United States, or by a prime contractor, or by an action in an appropriate court of the United

States. There is no existing statutory or other authority of law under which it may be said that the United States clearly has a right to recover the amounts of any such fees or gratuities." H.R.Rep. No. 212, 79th Cong., 1st Sess. (1945), U.S.Code Cong.Serv.1946, pp. 1081, 1082–1083; S.Rep. No. 177, 79th Cong., 1st Sess. (1945).

" * * * Since cost-plus-a-fixed-fee or cost reimbursable prime contractors are reimbursed by the United States for the cost of all subcontracts and purchase orders performed thereunder, the Government undoubtedly bears the ultimate cost of such fees, commissions, and gratuities without receiving any benefit therefrom." S.Rep. No. 177, supra, H.R.Rep. No. 212, supra, p. 2, U.S.Code Cong.Service 1946, p. 1082.

Defendants argue that common law principles do not apply here for the reason that Brune was not an agent owing a fiduciary duty to Fisher Body but was an employee performing a ministerial function, since he did not set the price of the blueprints and he was limited to awarding the subcontracts to a list of potential subcontractors prepared by his superiors. Nevertheless, Brune did have some discretion in awarding the subcontracts and it was his choice of the defendants that created a contract between them and Fisher Body.

■ The constitutional prohibition against the enactment of *ex post facto* laws has been primarily limited to criminal or penal statutes. Calder v. Bull, 3 Dall. 386, 1 L.Ed. 648; Kentucky Union Co. v. Commonwealth of Kentucky, 219 U.S. 140, 31 S.Ct. 171, 55 L.Ed. 137; Porter v. Senderowitz, 3 Cir., 158 F.2d 435, 440. Section 1 of the Anti-Kickback Act, which is the only section under consideration, is civil in nature and is not offensive to the Constitution.

Defendants also contend that the portion of the Act providing that "it shall be conclusively presumed" that the amount of the kickback was included in the price of the subcontract and ultimately borne by the Government is unconstitutional as being an unwarranted invasion by the legislature of the judicial function.

■ The weight of present-day opinion is that " * * * conclusive presumptions do not establish a rule of evidence, *but declare a rule of substantive law*." United States v. Jones, 9 Cir., 176 F.2d 278, 288. Also see, 9 Wigmore, Evidence, § 2492 (3d Ed. 1940). As a rule of substantive law, the conclusive presumption of the Anti-Kickback Act is not offensive to due process since it is based on a logical and probable connection with the antecedent facts. See City of New Port Richey v. Fidelity & Deposit Co., 5 Cir., 105 F.2d 348, 123 A.L.R. 1352; United States v. Jones, supra.

■ The Government, while not a direct party to the contract between Fisher Body and the defendants, was the ultimate beneficiary of that contract and is in a position to recover the amount of the kickback as the real party in interest under Rule 17(a), Federal Rules of Civil Procedure, 28 U.S.C.A. Cf. Massachusetts Bonding & Insurance Co. v. Feutz, 8 Cir., 182 F.2d 752; Broidy v. State Mut. Life Assur. Co. of Worcester, Mass., D.C., 10 F.R.D. 195.

■ Procedurally, all the Anti-Kickback Act does is to supplement existing procedures by giving the United States Government, in certain situations, a clear and direct procedural right to sue as party-plaintiff for the recovery of kickbacks. There is no constitutional invalidity in providing retrospectively a supplemental procedural remedy for a previously existing remedy since defendants have no vested right in any particular mode of procedures. Gibbes v. Zimmerman, 290 U.S. 326, 54 S.Ct. 140, 78 L.Ed. 342.

■ Section 1 is not violative of the Federal Constitution. Without passing upon the constitutionality of other sections of the Act, it is sufficient to point out that an act constitutionally void in part is not necessarily void in its entirety, providing the valid section or sections, standing alone, can be given legal effect, and the legislature intended the valid sections to stand alone. Lynch v. United States, 1934, 292 U.S. 571, 586, 54 S.Ct. 840, 78 L.Ed. 1434;

Dorchy v. State of Kansas, 1924, 264 U.S. 286, 44 S.Ct. 323, 68 L.Ed. 686.

For the reasons stated, judgment may be entered for the plaintiff for $27,425.