**UNITED STATES of America,**
**Plaintiff-Appellant,**

v.

**Mark A. PERRY, Paul S. Anderson, Elwood C. Rork, Metal Inspection Company, Inc., a California corporation, and Metal Inspection and Engineering Company, Inc., a Nevada corporation, Defendants-Appellees.**

No. 22872.

United States Court of Appeals,
Ninth Circuit.

Argued Nov. 7, 1969.

Decided June 9, 1970.

As Amended on Denial of Rehearing
July 21, 1970.

Daniel Joseph (argued), Alan S. Rosenthal, Dept. of Justice, Wm. D. Ruckelshaus, Asst. Atty. Gen., Civil Division, Washington, D. C.; Edwin L. Weisl, Jr., Asst. Atty. Gen., Wm. M. Byrne, Jr., U. S. Atty., Los Angeles, Cal., for appellant.

J. E. Simpson (argued), Eugene M. Elson, Lloyd F. Dunn, Los Angeles, Cal., for appellee.

Before BROWNING, HUFSTEDLER and WRIGHT, Circuit Judges.

EUGENE A. WRIGHT, Circuit Judge:

The Anti-Kickback Act prohibits "any fee, commission, or compensation of any kind or the granting of any gift or gratuity of any kind, either directly or indirectly," by a subcontractor to any officer, partner, employee, or agent either of a prime contractor holding a negotiated contract with the United States or of a higher tier subcontractor under such a prime contract, when such payments are made "as an inducement for the award of a subcontract or order from the prime contractor or any subcontractor, as an acknowledgment of a subcontract or order previously awarded." 41 U.S.C. § 51. Payment or receipt of such a kickback is a crime, 41 U.S.C. § 54, and the United States may recover the amount of the kickback in a civil action from either the payor or the receiver. 41 U.S.C. § 51.

In this proceeding we are asked to determine, on the basis of affidavits submitted on motion for summary judgment, whether certain payments, made by a subcontractor to agents of a higher-tier subcontractor, constituted "inducements" or "acknowledgments" within the meaning of the statute. For the reasons given below, we think that resolution of the question at issue, on this record and at this time, is inappropriate, and we remand the cause to the District Court for a trial and the development of a full factual record.

I

The action was brought by the Government to recover some $150,000 paid during the years 1955–1959 by defendant Mark Perry to defendants Paul Anderson and Elwood C. Rork. All defendants moved for summary judgment on the ground that the payments made were not inducements or acknowledgments within the meaning of the Act. Defendants submitted 13 affidavits in support of their motion.

The Government chose to submit only one counter-affidavit, on a topic not relevant to the issue here, but cross-moved for summary judgment on the grounds that defendants' own affidavits sufficed to establish their liability. The District Court granted defendants' motion, and the Government appeals both from the grant of the defendants' motion and from the denial of its own.

It is common ground between the parties that the payments in question were actually made, that Rork and Anderson were at material times employees of Arcturus Manufacturing Company, and that Perry[1] received metals inspection subcontracts from Arcturus. The latter concern was engaged in manufacturing airplane parts for aircraft producers who the Government alleges were in turn bound by negotiated contracts to the Defense Department. Much of Perry's inspection work was done on these airplane parts.

Perry's payments to Anderson[2] were made pursuant to a contract entered into

---

1. We use "Perry" to refer sometimes to defendant Perry himself, and sometimes to one or the other of the defendants Metal Inspection Co., Inc., and Metal Inspection and Engineering Co., Inc., corporations controlled by Perry.

2. We use "Anderson" to refer sometimes to defendant Anderson and sometimes to Triangle Engineering, a partnership in which Anderson and Rork and, for a brief period, a third party joined.

in 1950, whereby Anderson agreed to assist Perry, then a struggling mechanic, in obtaining metals inspection work. Anderson was to have two-thirds of the profits of any business he was "successful in soliciting." Rork was variously a business associate of Anderson's, entitled to a share of payments made by Perry to Anderson, and an employee of Perry's engaged in development of a new metal forging process. The Government contends that Rork's "salary" as Perry's employee was but a disguised kickback.

So much at least is clear from the affidavits submitted in this case. But the affidavits are not at all illuminating as to the circumstances surrounding the transactions in issue.

No certain conclusion is possible as to the precise scope of Anderson's duties. Was he entitled to payment only if he "solicited" or "obtained" business for Perry? That is what the 1950 contract and Anderson's affidavit say. But Perry's affidavit says that Anderson was paid not or soliciting business, but only for obtaining leads.

Did Anderson and Rork in fact influence the award of contracts to Perry? The affidavits deny all such influence. Yet it takes no undue cynicism to infer that in exchange for two-thirds of his profits Perry hoped to receive something other than friendly advice as to business opportunities.

Were Perry's payments to Anderson and Rork made with the full knowledge and approval of Arcturus? From the affidavits submitted here, one would assume they were. Yet the reported California decisions disclose an action brought by Arcturus against Rork, Anderson, and Perry, seeking recovery of kickbacks made by Perry to the other defendants. Arcturus Mfg. Co. v. Rork, 198 Cal.App. 2d 208, 17 Cal.Rptr. 758 (1961).

The waters are further muddied by the fact that defendants' conduct, for all that appears in the record before us, was lawful at the time it occurred. Prior to its retroactive amendment in 1960, the Anti-Kickback Act covered only cost-plus-a-fixed-fee or other cost-reimbursable contracts. Yet the payments challenged here, or most of them, apparently occurred in connection with contracts that were negotiated, and hence subject to the amended Act, but were not cost-reimbursable. Defendants therefore appear to have felt no need to conceal their dealings, and we are deprived of the secrecy which usually serves to distinguish legitimate business payments from prohibited kickbacks. United States v. Acme Process Equipment Co., 385 U.S. 138, 144, 87 S.Ct. 350, 17 L.Ed.2d 249 (1966).

■ Under the circumstances, we are unable to say that the affidavits leave us without doubt as to the absence of a genuine issue of fact. Summary judgment should not be granted where contradictory inferences may be drawn from undisputed evidentiary facts. United States v. Diebold, Inc., 369 U.S. 654, 82 S.Ct. 993, 8 L.Ed.2d 176 (1962); Stevens v. Howard D. Johnson Co., 181 F.2d 390, 394 (4th Cir. 1950); Ramsouer v. Midland Valley R.R., 135 F.2d 101, 106 (8th Cir. 1943).

■ Nor is it appropriate where a trial, with its opportunity for cross-examination and testing the credibility of witnesses, might disclose a picture substantially different from that given by the affidavits. Consolidated Electric Co. v. United States ex rel. Gough Industries, Inc., 355 F.2d 437, 438–439 (9th Cir. 1966); Shahid v. Gulf Power Co., 291 F.2d 422, 428 (5th Cir. 1961); Peckham v. Ronrico Corp., 171 F.2d 653, 657 (1st Cir. 1948); Bowers v. E. J. Rose Mfg. Co., 149 F.2d 612, 615–616 (9th Cir. 1945).

The parties nevertheless urge that summary judgment is proper because none of the issues of fact that trouble us are "material" in the sense that re-

solving them will determine liability. Rule 56(c), Fed.R.Civ.P.

Thus the Government asks us to impose liability simply on the basis of the payments made. It suggests that "when Perry made payments pursuant to the 1950 contract in connection with the Arcturus business he was, in effect, recognizing that Anderson had brought him the business," and hence acknowledging the award of subcontracts within the meaning of the Act.

The defendants, on the other hand, argue that the 1950 contract was a legitimate brokerage arrangement and that the Act should not be construed so as to punish "normal trade practices."

We do not now decide whether either construction of the Act is correct. We note only that to decide the issue means to determine the meaning of an extraordinarily ambiguous statute in the face of an inconclusive legislative history, a nearly complete absence of relevant precedent and a totally inadequate factual record. The Anti-Kickback Act represents no minor or inconsiderable legislative policy, but one which determines the rights and responsibilities of thousands of suppliers of goods and services to the Government, and has significant impact on the course of federal procurement. We prefer not to expound its meaning in the absence of the light that may be shed by a factual record developed at trial. White Motor Co. v. United States, 372 U.S. 253, 83 S.Ct. 696, 9 L.Ed. 2d 738 (1963); Kennedy v. Silas Mason Co., 334 U.S. 249, 68 S.Ct. 1031, 92 L.Ed. 1347 (1948); Pacific American Fisheries v. Mullaney, 191 F.2d 137 (9th Cir. 1951).

## II.

Since a trial will be required on the main issue, and since the parties are before this court, we find it appropriate in the interest of judicial economy to resolve a number of questions of law. After argument, we requested supplemental briefs on three questions raised in the pleadings but not reached by the District Court.

■ Our first two questions to the parties inquired whether the 1960 amendment to the Anti-Kickback Act, which extended its coverage to all negotiated contracts, ought to be applied to recover kickbacks made before 1960 in connection with contracts other than the cost-reimbursable contracts covered in the original version of the Act. We have decided that such retroactive application is proper.

■ It is of course true that a civil statute is normally presumed to operate only prospectively. Green v. United States, 376 U.S. 149, 160, 84 S.Ct. 615, 11 L.Ed.2d 576 (1964); Bruner v. United States, 343 U.S. 112, 117 n. 8, 72 S.Ct. 581, 96 L.Ed. 786 (1952); Del Guerchio v. Gabot, 161 F.2d 559, 561 (9th Cir. 1947). Retroactivity will, however, be found if Congress has clearly and unambiguously indicated its intent to make the statute retroactive. Kindleberger v. Lincoln Nat'l Bank, 81 U.S.App.D.C. 101, 155 F.2d 281, 286 (1946).

The Anti-Kickback Act specifically provides that it shall be applicable to kickbacks in connection with negotiated contracts "whether heretofore or hereafter made." 41 U.S.C. § 51. Taken at face value, such a provision would seem sufficient to manifest congressional intent that the statute be retroactive. *Cf.* Kindleberger v. Lincoln Nat'l Bank, *supra.*

The defendants point out, however, that the quoted portion of the statute was part of the version originally enacted in 1946. They concede that its effect was to apply the 1946 statute to kickbacks made prior to 1946 in connection with cost-reimbursable contracts, but contend that this expression of Congress's 1946 intent provides no clear and unambiguous answer to the question whether Congress in 1960 intended also to make retroactive the extension of the

Act to contracts other than cost-reimbursable ones.

There are three answers to this contention. *First,* the 1960 Act was not simply an amendment of the 1946 Act. Instead, Congress re-enacted the entire Anti-Kickback Act, expanding its coverage to include all negotiated contracts, rather than just cost-reimbursable contracts. 74 Stat. 740–41 (1960). The statutory phrase "heretofore or hereafter paid" must hence be taken to refer to 1960, rather than 1946.

*Second,* the 1960 legislative history conclusively shows that Congress intended retroactive effect. The Act was amended upon recommendation of the Comptroller General, who had taken note of various cases restricting the application of the Act to cost-reimbursable contracts. United States v. Barnard, 255 F.2d 583 (10th Cir. 1958); Hanis v. United States, 246 F.2d 781 (8th Cir. 1957); United States v. Norris, Crim. No. 18535 (E.D.Pa.1956). In the course of his letter to the House, the Comptroller General noted that the retroactive operation of the Act had been upheld in United States v. Davio, 136 F.Supp. 423 (E.D.Mich.1955), and stated that the proposed amendment to the act "does not disturb [its] retrospective feature." He added that the amended act was intended to give the General Accounting Office "the authority to take appropriate action with respect to violations under *prior* negotiated contracts." U. S. Code Cong. & Adm. News, p. 3296 (1960) (emphasis supplied).

*Third,* the Supreme Court has expressed the view that the civil provision of the Act, as amended in 1960, "was made retroactive to allow government recovery of kickbacks 'whether heretofore or hereafter paid * * *.' " United States v. Acme Process Equipment Co., *supra,* 385 U.S. at 142, 87 S.Ct. at 354. We do not regard this statement as dispositive of the issue here, since it was dictum in a case not absolutely controlling of this one on its facts. It is nevertheless entitled to great weight.

■ As to the constitutionality of such a retroactive application of the statute, we agree with the decision in United States v. Davio, *supra,* that there can be no due process objection when the defendants' course of conduct is in violation of the longstanding public policy against kickbacks, United States v. Acme Process Equipment Co., *supra;* Hazelton v. Sheckells, 202 U.S. 71, 26 S.Ct. 567, 50 L.Ed. 939 (1906); Tool Co. v. Norris, 69 U.S. (2 Wall.) 45, 17 L.Ed. 868 (1864), or in contravention of state civil or criminal law. *Cf.* Winget v. Rockwood, 69 F.2d 326 (8th Cir. 1934); Rezos v. Zahn & Nagel Co., 78 Cal.App. 728, 246 P. 564 (1926).

But the defendants urge that their conduct was blameless, apart from the 1960 Act, and that cases like *Davio,* involving palpably culpable conduct, do not apply. The due process clause, they argue, sets limits on the power of Congress retroactively to deprive them of vested property, innocently acquired. Coombes v. Getz, 285 U.S. 434, 52 S.Ct. 435, 76 L.Ed. 866 (1932); Truax v. Corrigan, 257 U.S. 312, 42 S.Ct. 124, 66 L.Ed. 254 (1921); New York Life Ins. Co. v. Dodge, 246 U.S. 357, 38 S.Ct. 337, 62 L.Ed. 772 (1918). *But cf.* Samuels v. McCurdy, 267 U.S. 188, 45 S.Ct. 264, 69 L.Ed. 568 (1925).

However this may be, we ought not to resolve the constitutional question posed by defendants in the absence of a more developed factual record than is presented. *Cf.* Communist Party of United States v. S.A.C.B., 367 U.S. 1, 71–72, 81 S.Ct. 1357, 6 L.Ed.2d 625 (1961); International Bhd. of Teamsters v. Denver Milk Producers, 334 U.S. 809, 68 S.Ct. 1015, 92 L.Ed. 1741 (1948); Rescue Army v. Municipal Court, 331 U.S. 549, 67 S.Ct. 1409, 91 L.Ed. 1666 (1947). This record provides no assurance that defendants' conduct was indeed blameless, and the Government strongly asserts the contrary. The question whether the Act, as applied to these defendants, unconstitutionally deprives them of vested property innocently acquired may properly await resolution until the completion of the trial.

■ There remains to discuss only defendants' assertion that an action to

recover kickbacks is one to enforce a civil penalty, and hence subject to the five-year statute of limitations contained in 28 U.S.C. § 2462. The question is whether the Government's remedy under the Act is compensatory in nature, or has a purpose going beyond making the plaintiff whole. Koller v. United States, 359 U.S. 309, 79 S.Ct. 755, 3 L.Ed.2d 828 (1959). United States v. Doman, 255 F.2d 865 (3d Cir. 1958), aff'd sub. nom. *Cf*. United States ex rel. Marcus v. Hess, 317 U.S. 537, 63 S.Ct. 379, 87 L.Ed. 443 (1944); Chattanooga Foundry & Pipe Works v. City of Atlanta, 203 U.S. 390, 27 S.Ct. 65, 51 L.Ed. 241 (1906).

The civil remedies of the original Anti-Kickback Act were designed to make the United States whole by recovering the extra costs that occurred when kickbacks were paid. S. Rep. No. 177, 79th Cong., 1st Sess. (1945); H.R. Rep. No. 212, 79th Cong., 1st Sess. (1945); United States v. Davio, *supra*. As this court held in Jensen v. United States, 326 F.2d 891 (9th Cir. 1964), there was a "logical and probable connection" between the size of a kickback and the amount of Government loss. Prior to the 1960 amendment, therefore, an action under the Act was clearly not one to recover a penalty.

By extending the Act to all negotiable contracts, the 1960 amendment may have destroyed the neat balance between the kickback and the Government loss. *Cf*. U.S. Code Cong. & Adm. News, p. 3304; Travers v. United States, 361 F.2d 753 (1st Cir. 1966). But lack of perfect balance does not make the recovery a civil penalty. United States v. Doman, *supra*. Certain kickbacks not covered by the pre-1960 Act substantially harmed the Government, perhaps even in excess of the size of the kickback. United States v. Acme Process Equipment Co., *supra*, 385 U.S. at 143–144, 87 S.Ct. 350, 17 L.Ed.2d 249. We hold that this action is not one to recover a penalty.

Vacated and remanded for further proceedings.