Philip BRIGGS

v.

AMERICAN AIR FILTER COMPANY, INC., a Foreign Corporation, and William F. McClure, Jr.

Dan C. ROBY

v.

AMERICAN AIR FILTER COMPANY, INC., a Foreign Corporation, and William F. McClure, Jr.

Civ. Nos. C77–1418A, C77–1419A.

United States District Court, N. D. Georgia, Atlanta Division.

June 28, 1978.

Donald A. Weissman, Katz, Weissman & Loftis and Robert C. Dillon, Merrill & Dillon, Atlanta, Ga., for plaintiffs.

Burt DeRieux, Greene, Buckley, DeRieux & Jones, Atlanta, Ga., for defendants.

## MEMORANDUM AND ORDER

O'KELLEY, District Judge.

In these related removal actions from the Superior Court of DeKalb County, Georgia, the respective plaintiffs are seeking recovery of damages for defendant William F. McClure's allegedly unlawful monitoring of a certain telephone conversation between the plaintiffs of March 9, 1977. Count one of both complaints alleges a cause of action for invasion of privacy. Count two alleges a cause of action under 18 U.S.C. § 2520 for violation of the wiretap provisions of the Omnibus Crime Control and Safe Streets Act of 1968 [hereinafter the "Omnibus Act of 1968"], 18 U.S.C. § 2510 *et seq.* A counterclaim in Civil Action No. C77–1419A alleges a cause of action against plaintiff Dan C. Roby for breach of a loyalty agreement with defendant American Air Filter Company [hereinafter "AAF"]. Removal jurisdiction is predicated upon these actions being ones "of which the district courts of the United States have original jurisdiction" by virtue of the presence of a claim arising under the laws of the United States [count two], the doctrine of pendent jurisdiction [count one], and principles of ancillary jurisdiction [the counterclaim in C77–1419A]. 28 U.S.C. § 1441. These actions are presently before the court on cross motions for summary judgment on counts one and two of the complaints.

The underlying facts in these actions are essentially uncontroverted. At all material times herein plaintiff Dan C. Roby was an employee at the Atlanta branch office of defendant AAF. Plaintiff Philip Briggs was a former employee of defendant AAF who was operating a business in competition with AAF. Defendant William F. McClure, Jr. was the manager of the AAF Atlanta branch office. Over a period of months prior to the telephone conversation in question, McClure apparently learned that Roby was meeting with Briggs under circumstances that led him to believe that Roby was disclosing confidential business information to Briggs in contravention of a loyalty agreement which Roby had signed in connection with his employment with AAF. On March 9, 1977, Roby and McClure had a brief discussion at the AAF Atlanta branch office about a job on which AAF would be making a bid. Shortly thereafter, the AAF office secretary informed McClure that Roby was engaged in a telephone conversation with Briggs on one of the AAF business telephones. Having reason to believe that Roby was acting in consort with Briggs to the detriment of AAF, McClure picked up an extension phone and listened to their conversation to determine whether they were discussing confidential AAF matters. During the course of monitoring the conversation between Briggs and Roby on the extension phone, McClure learned that Roby was, in fact, leaking confidential price and bidding information to Briggs. McClure then reported the contents of this conversation to others at AAF as evidence of Briggs' disloyalty. His actions apparently resulted in a decision to terminate Briggs' employment with AAF.

Except for certain explicit, narrowly defined exemptions, the federal wiretap statute generally prohibits the "interception" of "any wire or oral communication." 18 U.S.C. § 2511. "Intercept" is defined as "the aural acquisition of the contents of any wire or oral communication *through the use of any electronic, mechanical, or other device.*" (Emphasis added.) 18 U.S.C. § 2510(4). The phrase "electronic, mechanical, or other device" is defined as:

any device or apparatus which can be used to intercept a wire or oral communication other than—

(a) any telephone or telegraph instrument, equipment or facility, or any component thereof, (i) *furnished to the subscriber or user by a communications common carrier in the ordinary course of its business and being used by the subscriber*

*or user in the ordinary course of its business* . . . .

(Emphasis added.) 18 U.S.C. § 2510(5). The motions of the defendants for summary judgment on count two of these related complaints raise a substantial federal question in interpretation of the foregoing wiretap provisions: Is use of an extension phone to monitor a conversation without the consent of the parties thereto implicitly exempted from the conduct proscribed in 18 U.S.C. § 2511 by virtue of the definition of the phrase "electronic, mechanical, or other device" in 18 U.S.C. § 2510(5)(a)(i)?

Although the Court of Appeals for the Fifth Circuit answered this question in the affirmative in the interspousal controversy in *Simpson v. Simpson*, 490 F.2d 803 (5th Cir.), *cert. denied*, 419 U.S. 897, 95 S.Ct. 176, 42 L.Ed. 2d 141 (1974), the court stated that its decision was "limited to the specific facts" therein—the interception of a family member's telephone conversation by use of an extension phone in the family home. Thus, *Simpson* left unanswered in this circuit the more general question of whether there is an extension phone exemption to the interception prohibitions of 18 U.S.C. § 2511 where the *locus in quo* extends beyond the marital home of the parties, as in the case *sub judice*. In attempting to answer this more general question in *United States v. Harpel*, 493 F.2d 346 (10th Cir. 1974), the Court of Appeals for the Tenth Circuit focused on the statutory language "in the ordinary course of business" and found that the telephone extension exemption applies only to telephone extensions used "in the ordinary course of [the subscriber's] business." The court then held that "as a matter of law . . . a telephone extension used without authorization or consent to surreptitiously record a private conversation is not used in the ordinary course of [the subscriber's] business." *Id.* at 351.

This court agrees with the *Harpel* court that the operative factual test to determine the applicability of the extension phone exemption is whether the extension phone is being used by the subscriber "in the ordinary course of its business" but, with all due respect, disagrees with its holding that no use of an extension phone without consent can be "in the ordinary course of [the subscriber's] business." Such a narrow construction of the extension phone exemption is not supportable when the federal wiretap statute is read as a whole because interceptions which are consented to by one of the parties to the conversation are already specifically exempted under 18 U.S.C. § 2511(2)(c) and (d). Congress could not have intended a construction of the extension phone exemption which would render it meaningless. In this court's view, the case *sub judice* is a striking illustration of circumstances under which the use of a telephone extension to surreptitiously monitor a conversation without the consent of the parties thereto was "in the ordinary course of [the subscriber's] business." *Cf. Anonymous v. Anonymous*, 558 F.2d 677, 679 n.5 (2d Cir. 1977). By affidavit, defendant McClure has conclusively established that his purpose in monitoring the conversation in question between Roby and Briggs was "to protect AAF business," that he had reasonable cause to undertake such action, and that he did not engage in such action to learn about the personal affairs of Roby and Briggs. Therefore, it is manifest that McClure's use of the extension phone to listen in on the conversation in question was "in the ordinary course of [AAF] business."

This court's broader construction of the telephone extension exemption from that proffered in *Harpel, supra*, comports with the approach taken by the Court of Appeals for the Fifth Circuit in the interspousal interception controversy in *Simpson, supra*. The *Simpson* court researched and considered the legislative history of the wiretap provisions of the Omnibus Act of 1968 in great detail. After determining that the legislative history of the wiretap provisions was inconclusive, the *Simpson* court followed general principles for statutory construction of criminal statutes:

> [W]e note that not only does Title III [of the Omnibus Act of 1968] have the primary goal of controlling crime, but that it also prescribes criminal sanctions for its violators. . . . We thus are bound by the principle that criminal statutes

must be strictly construed, to avoid ensnaring behavior that is not clearly proscribed. *See Kordel v. United States*, 1948, 335 U.S. 345, 349, 69 S.Ct. 106, 93 L.Ed. 52.

. . . . . .

*Simpson, supra* at 809. Although the question of the proper statutory construction of the telephone extension exemption is addressed herein in the context of a civil action for damages pursuant to 18 U.S.C. § 2520, because the federal wiretap provisions of the Omnibus Act of 1968 are essentially a criminal enforcement measure, this court has followed these basic due process principles of criminal statutory construction in applying the telephone extension exemption in the case *sub judice*. For the above reasons, the defendants' motions for summary judgment on count two of the complaints should be and are hereby granted.

■ The remaining claims for invasion of privacy and the counterclaim for breach of a loyalty agreement in these related actions are all brought under the laws of the state of Georgia. Therefore, because diversity of citizenship between the respective plaintiffs and the defendants was not alleged and apparently is, in fact, incomplete herein, the remaining claims and counterclaim are not independently removable. Although federal jurisdiction is not lost when the claim which was the federal removal predicate is eliminated, it is now discretionary with the court whether it should hear and decide the remaining claims or remand them to the state courts. Because there has been no substantial commitment of the judicial resources to these nonremovable claims and counterclaim and because resolution of the invasion of privacy claims necessarily involves novel questions of Georgia law in the area of privacy rights, the court believes that remand is particularly appropriate in the case *sub judice*. *See Murphy v. Kodz*, 351 F.2d 163 (9th Cir. 1965); *Rotermund v. United States Steel Corp.*, 346 F.Supp. 69 (E.D.Mo.1972), *aff'd*, 474 F.2d 1139 (8th Cir. 1973). As a matter of comity in furtherance of our federalism, federal courts should be reluctant to make needless decisions of state law. *United Mine Workers v. Gibbs*, 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966). Accordingly, these actions should be and are hereby remanded to the Superior Court of DeKalb County, Georgia.