BINGHAM, LTD., Plaintiff-Appellant,

v.

UNITED STATES of America, Defendant-Appellee.

No. 82–8588.

United States Court of Appeals, Eleventh Circuit.

Feb. 9, 1984.

Joseph H. King, Jr., Atlanta, Ga., for plaintiff-appellant.

Myra H. Dixon, Asst. U.S. Atty., Atlanta, Ga., for defendant-appellee.

Before VANCE and CLARK, Circuit Judges, and SWYGERT *, Senior Circuit Judge.

CLARK, Circuit Judge:

Appellant ("Bingham"), a licensed manufacturer of small arms ammunition, see 18 U.S.C. § 921 *et seq.,* appeals the district court's denial of declaratory relief under 28 U.S.C. § 2201. The sole issue on appeal is whether the district court was correct in determining on a motion for summary judgment that the manufacturer of an exploding bullet which contains a canister of highly explosive lead azide must comply with the explosive licensing requirements of Title XI of the Organized Crime Control Act of 1970, 18 U.S.C. §§ 841–847 ("OCCA" or

* Honorable Luther M. Swygert, U.S. Circuit Judge for the Seventh Circuit, sitting by desig- nation.

"Act"). We have jurisdiction. 28 U.S.C. § 1291.

## I.

In response to the rash of terrorist bombings during the late 1960s, Congress enacted Title XI of the OCCA "to protect interstate and foreign commerce against interference and interruption by reducing the hazard to persons and property arising from misuse and unsafe or insecure storage of explosive materials." Sec. 1101, Pub.L. 91–452, *reprinted in* [1970] U.S.Code Cong. & Ad. News 1109. To effect this purpose, Congress made it unlawful for any person "to engage in the business of importing, manufacturing, or dealing in explosive materials without a license...." 18 U.S.C. § 842(a)(1). The broad definition of "explosive materials" made this proscription virtually all-inclusive. *See* 18 U.S.C. § 841(c), (d).

Notwithstanding this all-inclusive definition, Congress expressly stated that "[i]t is not the purpose of [Title XI] to place any undue or unnecessary Federal restrictions or burdens on law-abiding citizens with respect to the acquisition, possession, storage, or use of explosive materials for ... lawful purposes, or to ... [impose] procedures or requirements other than those reasonably necessary to implement and effectuate the provisions of this title." Sec. 1101, Pub.L. 91–452, *reprinted in* [1970] U.S.Code Cong. & Ad.News 1109. Accordingly, Congress enacted several exemptions from the Act. One of those exemptions provides that the Act shall not apply to "small arms ammunition and components thereof." 18 U.S.C. § 845(a)(4). The scope of that exemption is the subject of this appeal.

## II.

Beginning in early 1979, appellant manufactured and sold "Devastator" ammunition, a .22 caliber cartridge designed to explode on impact. Like conventional ammunition, the "Devastator" contains an explosive charge in the base of the shell to propel the bullet into flight when fired. Unlike conventional small arms ammunition, the "Devastator" contains an additional explosive charge in the tip of its cartridge. This additional explosive charge is the subject of this litigation.

The tip of each "Devastator" cartridge contains a small canister of lead azide, a highly explosive material. Upon impact, the canister explodes, causing the bullet to fragment and thereby prevents the bullet from passing through or ricocheting off the object it strikes. Although Bingham does not manufacture the lead azide canisters, the canisters are designed and made specifically for use in "Devastator" ammunition, and Bingham inserts the canister into the projectile during the manufacturing process.

Before this litigation, Bingham enjoyed considerable success in marketing the "Devastator" ammunition.[1] These profits waned, however, when, pursuant to a letter from the Bureau of Alcohol, Tobacco and Firearms, Department of the Treasury ("Bureau" or "ATF"), appellant ceased marketing the "Devastator" ammunition to the general public.[2] This letter of October 6, 1981, informed Bingham that lead azide canisters were explosives regulated by the OCCA and, therefore, until Bingham obtained an explosives license, the Bureau would deem any sale of "Devastator" ammunition a "willful violation" of the OCCA.

On March 5, 1982, appellant brought a declaratory judgment action, maintaining that, although the canister in the tip of the bullet admittedly contains explosive material, the canister is merely a "component" of "small arms ammunition" and is, therefore, exempt from regulation pursuant to 18 U.S.C. § 845(a)(4). After a hearing on cross motions for summary judgment, the district court concluded that the "small

---

1. On a wholesale basis, sales of "Devastator" ammunition to ammunition retailers was in excess of $2,000 per week. (Tr. at 9).

2. Since receiving the Bureau's letter, Bingham has sold "Devastator" ammunition only to government agencies, in accordance with the exemption provided in § 845(a)(3).

arms ammunition and components thereof" exemption did not countenance appellant's exploding bullet, because the OCCA's legislative history reveals that this exemption applies only to parts traditionally used in ammunition for sporting arms. *Bingham, Ltd. v. United States,* 545 F.Supp. 987, 991 (N.D.Ga.1982). On appeal, Bingham challenges that summary judgment ruling.

## III.

■■■ Disposition of a summary judgment motion in a declaratory judgment action is governed by the same basic principles that generally rule the grant or denial of such a motion. *See* 6 Moore's Federal Practice § 56.17[19]. Before rendering summary judgment, the district court must determine "that there is no genuine issue as to any material fact" and "that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.Pro. 56(c); *Shahid v. Gulf Power Co.,* 291 F.2d 422, 423–24 (5th Cir.1961), *rehearing denied,* 298 F.2d 793 (1962). The party moving for summary judgment has the burden of showing the absence of a genuine issue as to any material fact. *See Weinberger v. Hynson, West-cott & Dunning,* 412 U.S. 609, 93 S.Ct. 2469, 37 L.Ed.2d 207 (1973). The district court must view the inferences to be drawn from materials submitted in support of that motion, however, in a light "most favorable to the party opposing the motion." *United States v. Diebold, Inc.,* 369 U.S. 654, 655, 82 S.Ct. 993, 994, 8 L.Ed.2d 176, 177 (1962). *Sweat v. Miller Brewing Co.,* 708 F.2d 655, 656 (11th Cir.1983).

■■■ Once the movant sustains its burden of demonstrating the absence of genuine factual issues, summary judgment may still be inappropriate. First, even if the material factual issues are not in dispute, they must furnish an adequate basis for the court to apply the proper legal principles in resolving a difficult question of law. *See United States v. Perry,* 431 F.2d 1020, 1023 (9th Cir.1970) (statutory construction). *See also Felix v. Young,* 536 F.2d 1126, 1134 (6th Cir.1976) (constitutional law); *Kirkpatrick v. Consolidated Underwriters,* 227 F.2d 228, 231 (4th Cir.1955) (insurance policy interpretation) (*quoting Pierce v. Ford Motor Co.,* 190 F.2d 910, 915 (4th Cir.1951)); *Smith v. City of Manchester,* 460 F.Supp. 30, 36 (E.D.Tenn.1978) (constitutional law); *Rypkema v. Bowers,* 66 F.R.D. 564, 569 (N.D.W.Va.1974) (same). *See generally* Moore's Federal Practice, § 56.15[1.–0], 56–398. Second, the opponent may rebut the movant's showing of the nonexistence of a genuine issue of material fact by producing countervailing evidence. *See Brennan v. D.J. McNichol Co.,* 439 F.Supp. 499 (E.D.Pa. 1977).

In the instant case, the district court granted summary judgment in favor of the government because the legislative history of § 845(a)(4) demonstrated that the exemption in question did not apply to Bingham's ammunition. Specifically, the court concluded that Congress clearly intended to limit the "small arms ammunition and components thereof" exemption to conventional sporting ammunition. In reviewing that conclusion, we apply the same legal principles which govern the district court's summary judgment ruling. *Environmental Defense Fund v. Marsh,* 651 F.2d 983, 991 (5th Cir.1981).

## IV.

Affirming the district court's opinion would require us to overcome two hurdles, both of which are presented because this is a summary judgment action. The first problem relates to the adequacy of the established factual basis upon which the district court resolved a difficult question of statutory construction. The second problem arises from the rebuttal evidence offered by appellant at the summary judgment hearing.

### A. *The Factual Basis*

■■■ The OCCA is a criminal statute imposing punishment of up to a $10,000 fine or ten years' imprisonment for the sale of explosives without a license. 18 U.S.C. § 844(a). "The first interpretative principle and one to which the Supreme Court has repeatedly paid tribute provides that 'ambiguity concerning the ambit of criminal stat-

utes should be resolved in favor of lenity.'" *United States v. Grissom,* 645 F.2d 461, 466 (5th Cir.1981), *quoting United States v. Bass,* 404 U.S. 336, 347, 92 S.Ct. 515, 522, 30 L.Ed.2d 488, 496 (1971) (adopting the narrower reading of a statute where legislative history is ambiguous). *See Busic v. United States,* 446 U.S. 398, 406, 100 S.Ct. 1747, 1753, 64 L.Ed.2d 381, 389 (1980); *United States v. Dudley,* 581 F.2d 1193, 1197 (5th Cir.1978). This familiar rule of statutory construction applies even though we construe the OCCA in a declaratory judgment action, a civil context. *See FCC v. American Broad. Co.,* 347 U.S. 284, 296, 74 S.Ct. 593, 600–01, 98 L.Ed. 699, 709 (1954) (strictly construing a criminal statute in a civil action); *Schwartz v. Romnes,* 495 F.2d 844, 849 (2d Cir.1974) (applying the rule of strict construction in a stockholder's derivative suit); *Briggs v. American Air Filter Co.,* 455 F.Supp. 179, 182 (N.D.Ga.1978) (following "basic due process principles of criminal statutory construction" in a civil damage action), *aff'd,* 630 F.2d 414 (5th Cir.1980). Applying this rule, we do not consider Congress' intent so clear as to entitle the government to judgment as a matter of law upon the factual record as developed thus far.

■ First, one aspect of the congressional history discussed by the trial court, 545 F.Supp. at 990, seems to cut against the court's conclusion, rather than support it. A Model Explosives Act, drafted by the Institute of Makers of Explosives, was the subject of testimony during House hearings, and contained exemption language virtually identical to existing § 845(a)(4). *See Explosives Control: Hearings Before Subcomm. No. 5 of the House of Rep. Comm. on the Jud.,* 91st Cong., 2d Sess. 193 (1970). The definitional section of the Model Act, however, specifically excluded "military-type ammunition containing explosive bursting charges" from its definition of "small arms ammunition." *Id.* at 195. Although Congress adopted language identical to the Model Act's "small arms ammuni-

tion" exception, the ATF has not adopted the Model Act's definition of "ammunition"; 27 C.F.R. § 55.11 (1983) does not contain an express exclusion of "military-type ammunition containing explosive bursting charges."

Secondly, a subsequent amendment to § 845(a)(5) casts doubt upon the district court's conclusion that both §§ 845(a)(4) and (5) were effectively limited to sports-related activities. As originally enacted in 1970, § 845(a)(5) exempted "black powder in quantities not to exceed five pounds." Pub.L. No. 91–452, § 845(a)(5), 84 Stat. 952, 958 (1970), *reprinted in* [1970] U.S.Code Cong. & Ad.News 1073, 1117. Although this exemption clearly was designed to accommodate sporting enthusiasts, *see* H.R. Rep. No. 91–1549, 91st Cong., 2d Sess. 70, *reprinted in* [1970] U.S.Code Cong. & Ad. News 4007, 4047, in operation the exemption allowed "any person to obtain or possess up to five pounds of black powder, notwithstanding the possibility that it [might] be intended for criminal misuse." H.R.Rep. No. 93–1570, 93rd Cong., 2d Sess. 120, *reprinted in* [1974] U.S.Code Cong. & Ad.News 7805, 7808. To close this loophole, Congress amended the statute in 1975 to read: "Black powder ... intended to be used solely for sporting, recreational, or cultural purposes in antique firearms." *See United States v. Guess,* 629 F.2d 573, 576 (9th Cir.1980).

This amendment indicates that without the additional limiting language, the original exemption was drafted broader than necessary in order to minimize interference with lawful activity. Therefore, if, as the district court concluded, § 845(a)(4) was, like § 845(a)(5), originally enacted to facilitate pursuit of legitimate sporting activities, Congress' failure to add similar limiting language to subsection (4) renders that provision susceptible to a broader interpretation. Although the legislative history discussed by the district court lends support to its conclusion,[3] these countervailing factors

---

**3.** *See* 545 F.Supp. at 989–91. In addition to the evidence discussed in the district court opinion,

a grammatical rule of construction as applied to a pertinent portion of the legislative history

reveal that the legislative history and intent are ambiguous.

We do not decide that the district court's construction of the Act was incorrect. Rather, we consider this case analogous to the situation in *United States v. Perry, supra,* 431 F.2d 1020, in which the court confronted a difficult statutory construction problem in a summary judgment case involving The Anti-Kickback Act, 41 U.S.C. § 51. The Ninth Circuit vacated summary judgment noting that

> to decide the issue means to determine the meaning of an extraordinarily ambiguous statute in the face of an inconclusive legislative history, a nearly complete absence of relevant precedent and a totally inadequate factual record.... We prefer not to expound its meaning in the absence of the light that may be shed by [the development of] a factual record.

431 F.2d at 1023. As noted, the fact that the OCCA is a criminal statute heightens our concern with its ambiguity.

### B. *Appellant's Shifted Burden*

While the inadequacy of the factual basis despite the absence of a genuine issue as to a material fact warrants denial of the summary judgment motion in this case, appellant's rebuttal evidence regarding the statutory language and applicable regulation demonstrates that the district court's finding of no material issue of fact may have been premature.

The statute's definition of "explosives" is sufficiently broad to include "lead azide" within its purview. 18 U.S.C. § 841(d). Indeed, the parties have so stipulated. Section 842(a) makes it unlawful to import, manufacture or deal in explosives without a license. This licensing requirement does not apply, however, to "small arms ammunition and components thereof." 18 U.S.C. § 845(a)(4).

The OCCA defines neither "small arms ammunition" nor "components thereof." Section 847, however, authorizes the Secretary of the Treasury to "prescribe such rules and regulations as he deems reasonably necessary to carry out the provisions of this chapter." 18 U.S.C. § 847. Rules promulgated pursuant to such a broad authorization are legislative in char-

---

also supports the trial court's interpretation. In concluding that both sections 845(a)(4) and (5) applied to sporting arms, the district court relied on the following passage:

> Subsections (4) and (5) are designed to except firearms ammunition and a small quantity of black powder, used by "handloaders" for sporting purposes, from the coverage of the regulatory provisions of this chapter.

H.R.Rep. No. 91–1549, 91st Cong., 2d Sess., *reprinted in* [1970] U.S.Code Cong. & Ad.News 4007, 4047. The trial court read the phrase "used by 'handloaders' for sporting purposes" to refer back to both antecedents: "firearms ammunition" and "black powder." 545 F.Supp. at 990. Bingham contends that the modifying phrase, if read correctly, refers only to the immediate antecedent: "black powder."

"Under the doctrine of the last antecedent, relative and qualifying words, phrases, and clauses are to be applied to the words or phrase immediately preceding, and are not to be construed as extending to or including others more remote." *Quindlen v. Prudential Ins. Co. of Am.,* 482 F.2d 876, 878 (5th Cir.1973). In construing a statutory notice provision, the *Quindlen* court had to determine whether the modifying phrase, "which do not," applied to both or only one of the antecedent words, "binders" and "contracts." Applying the "doctrine of the last antecedent," the former Fifth Circuit held that the modifier referred only to the last antecedent, *i.e.,* only to "contracts."

The "doctrine of the last antecedent" has a supplementary rule which is applicable in this case. In *Quindlen,* the modifying phrase was not set off from the antecedent words by a comma, and the court held that the modifier referred only to the immediately preceding antecedent. 482 F.2d at 878. Where the modifier *is* set off from two or more antecedents by a comma, the supplementary "rule of punctuation" states that the comma indicates the drafter's intent that the modifier relate to more than the last antecedent. *See T.I. McCormack Trucking Co. v. United States,* 251 F.Supp. 526, 532–33 (D.N.J.1966). Because in the instant case a comma sets off the modifying phrase, "used by 'handloaders' for sporting purposes," from the antecedents, "firearms ammunition" and "black powder," this supplementary guide to the "doctrine of the last antecedent" supports the district court's reading of the modifying phrase to refer to both antecedents. However, these doctrines are not absolute rules, *United States v. Carubia,* 377 F.Supp. 1099, 1105 (E.D.N.Y.1974), and we attach even less weight to them in this context where we are construing a statement in the Act's legislative history, rather than the Act, itself.

acter and have the force and effect of law. *See Mourning v. Family Publ. Serv., Inc.,* 411 U.S. 356, 369, 93 S.Ct. 1652, 1660–61, 36 L.Ed.2d 318, 329 (1973); K. Davis, *Administrative Law Treatise* § 7:11 (2d ed. 1979).

The Secretary has delegated its rule-making authority under § 847 to the ATF. In defining ammunition, the ATF has indicated that the term shall include "percussion caps." 27 C.F.R. § 55.11 (1983). Furthermore, the Bureau has provided that "[t]he terms 'includes' and 'including' do not exclude other things not named which are in the same general class or are otherwise within the scope of the term defined." *Id.*

In a letter addressed to this court following oral argument,[4] counsel for appellant argued that "Devastator" ammunition is within the "same general class" as "percussion caps" and, therefore, falls within the statutory exception for "small arms ammunition." Counsel did not argue this point in his brief or at oral argument. Indeed, he erroneously maintained that 27 C.F.R. § 55.11 was inapplicable to this case. Bingham's President testified at the summary judgment hearing, however, that he believed "Devastator" ammunition was like "percussion caps," and that he had a document from the Department of Defense which classifies as a percussion cap ammunition "extremely similar [to] and with the same compounds" as "Devastator" ammunition. It would seem unreasonable to penalize Bingham simply because its counsel was less familiar with the applicable regulations than was its President.

**V.**

This discussion neither intimates any conclusions on the merits[5] nor implies that appellant's proof as it now stands presents a triable issue. Rather, the situation seems more analogous to that presented in *Shahid,* where the court said:

we nevertheless conclude that it is the part of good judicial administration for the facts in this case to be more fully developed before the trial court determines that there is truly no genuine issue as to any material fact.

*Shahid, supra,* 291 F.2d at 429 (quoting *Chapman v. Hawthorne Flying Serv.,* 287 F.2d 539, 541 (5th Cir.1961)). Further fact-finding may be desirable in the instant case, first, to determine whether appellant's "Devastator" ammunition is "in the same general class" or otherwise within the scope of a "percussion cap" under 27 C.F.R. § 55.11 (1983) and, second, to establish an adequate basis upon which to resolve a difficult question of statutory construction.

REVERSED *and* REMANDED.

---

4. The panel granted appellant permission to submit a letter setting forth appellant's position with regard to the applicable regulations.

5. Indeed, appellant's contention that "Devastator" ammunition is like a "percussion cap" seems weak on the merits. Although Bingham is correct in contending that an explosives license is not needed to sell percussion caps, 40 Fed.Reg. 59207, 59208 (Dec. 22, 1975), the ATF's conception of "percussion caps" comports with the district court's interpretation of § 845(a)(4). In amending former § 178.11 to exclude "percussion caps" from the Licensing and User Permit requirements, the ATF noted that

[T]he Bureau has traditionally considered percussion caps *and other igniters used in antique firearms* as small arms ammunition and, as such, these are exempt from regulatory provisions under 18 U.S.C. § 845(a)(4) and 27 C.F.R. § 181.141.

40 Fed.Reg. at 59208 (emphasis supplied). If the term "percussion cap" refers only to "igniters used in antique firearms," evidence of record describing "Devastator" ammunition lends little or no support to the contention that such ammunition is "in the same general class or otherwise within the scope of" the term "percussion cap" as so defined. *See* 27 C.F.R. § 55.11 (1983).