Harold SAAYBE, Jr. and Brenda
Saaybe, h/w

v.

**PENN CENTRAL TRANSPORTATION COMPANY, Robert W. Blanchette, Richard C. Bond, John H. McArthur, Trustees of Penn Central Transportation Company**

v.

**MINNESOTA MINING AND MANU-
FACTURING COMPANY.**

Civ. A. No. 76–54.

United States District Court,
E. D. Pennsylvania.

July 20, 1977.

Joseph D. Shein, Philadelphia, Pa., for plaintiff.

Paul F. Gallagher, Philadelphia, Pa., for defendants.

Clayton H. Thomas, Jr., Philadelphia, Pa., for third party.

## MEMORANDUM OPINION

BECHTLE, District Judge.

Presently before the Court is a motion of defendants Penn Central Transportation Company ("Penn Central"), Robert W. Blanchette, Richard C. Bond and John H. McArthur, trustees of the property of Penn Central, for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. Jurisdiction is based upon diversity of citizenship, 28 U.S.C. § 1332(a), and the amount in controversy is alleged to exceed $10,000, exclusive of interest and costs. This Memorandum Opinion supports our Order of June 29, 1977, denying in part Penn Central's motion for summary judgment.

On or about January 29, 1974, plaintiff Harold Saaybe, Jr. ("Saaybe"), was injured when the motor vehicle he was driving in as easterly direction on state highway No. 13 in Bristol, Pennsylvania, collided with a train being operated by Penn Central. In

his complaint,[1] Saaybe alleges that the collision occurred as a result of the willful, wanton, reckless and intentional conduct of Penn Central. In response to supplemental interrogatories[2] propounded by Penn Central, Saaybe stated in effect that, on the basis of his investigation to date, his theory of liability was based upon Penn Central's violation of its duty to make the railroad crossing in question safe when it knew that the view of the railroad crossing was extremely restricted, and also upon Penn Central's violation of Pennsylvania Public Utility Commission ("PPUC") application docket number 80312 and order of March 1, 1954 ("docket 80312"). In his pretrial memorandum,[3] Saaybe repeats his allegation that the collision was caused by Penn Central's gross negligence and reckless disregard of Saaybe's rights, in failing to warn Saaybe of the existence of the railroad track and in failing to erect certain warning and protective devices.

In support of its motion for summary judgment, Penn Central makes the following arguments: (1) that Saaybe's response to Penn Central's supplemental interrogatories and his pretrial memorandum limit him to a theory of liability based upon Penn Central's violation of docket 80312, that docket 80312 does not apply to the crossing in question, and that Penn Central is, therefore, entitled to the entry of summary judgment in its favor as a matter of law; and (2) that, even if Penn Central did violate applicable PPUC regulations or orders, said violations would constitute negligence, which Saaybe did not allege in his complaint, and not willful, wanton, reckless or intentional conduct, and that Penn Central is, therefore, entitled to summary judgment as a matter of law.

1. Paragraph five of Saaybe's complaint states as follows:

5. The aforesaid collision was caused by the following willful, wanton, reckless and intentional acts of the defendant, Penn Central Transportation Company:

(a) Recklessly disregarding the rights of motor vehicles on Highway # 13 by failing to warn said motor vehicles of the existence of an unreasonably dangerous condition with express knowledge of the existence of the said condition;

(b) Recklessly endangering the rights of motor vehicles on said highway by violating safety statutes, regulations, and/or ordinances governing railroad operations at the aforesaid location, with express knowledge of the existence of said laws, and with further knowledge of the hazardous condition of said intersection;

(c) Specifically violating applicable Pennsylvania Public Utility Commission regulations.

2. Saaybe's answer to Penn Central's Supplemental Interrogatory 25 is as follows:

25. Based upon the present state of plaintiffs' investigation, plaintiff believes and therefore avers that defendant was under a duty to make the railroad crossing in question safe. Indeed, defendant was aware that the views of the railroad crossing for approaching highway traffic were extremely restricted. Defendant was, therefore, ordered by the Public Utility Commission to install flashing light signals at the crossing for the protection of the public and to require train movements to be halted before proceeding across the highway at the crossing: Pennsylvania Public Utility Commission application docket number 80312, Order of March 1, 1954. Further, by virtue of the said Order, defendant Pennsylvania Railroad Company was to be reimbursed the sum of $4,949.01 to cover the expense of complying with the Commission's Order. The sum was so reimbursed. Despite this direction from the Commission, defendant did not erect automatic flashing light signals at the crossing which would operate during the periods the crossing was occupied by a train.

Saaybe's answer to Penn Central's Supplemental Interrogatory 40 is as follows:

40. Yes. There was a violation of the Public Utility Commission Order of March 1, 1954. In addition, there was a violation of the proper standard of care on the part of defendant where it knew that the view was extremely restricted in the area in question.

3. Saaybe's pretrial memorandum, in pertinent part, states as follows:

Plaintiffs allege that defendants were grossly negligent and acted in reckless disregard of their rights in failing to warn plaintiff, HAROLD SAAYBE, JR., of the existence of a railroad track and/or railroad cars at the said location, and that defendants were grossly negligent and acted in reckless disregard to plaintiff's rights in not erecting certain protective and warning devices for the purpose of notifying the public, and particularly HAROLD SAAYBE, JR., of the crossing and/or of trains thereon, thus not conforming to applicable Pennsylvania Public Utility Regulations pertaining thereto.

To prevail upon a motion for summary judgment,[4] Penn Central must conclusively demonstrate to the Court that there is no genuine issue as to any material fact and that it is entitled to a judgment in its favor as a matter of law. *Barron v. Honeywell, Inc., Micro Switch Div.*, 69 F.R.D. 390, 391 (E.D.Pa.1975). In ruling upon a motion for summary judgment, the Court must liberally construe the pleadings in favor of the party opposing the motion, and give the opposing party the benefit of all reasonable doubts and inferences in determining whether a genuine issue exists in fact which should be preserved for trial. *Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 157 n.15, 158–159, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970); *Barron v. Honeywell, Inc., Micro Switch Div., supra*, 69 F.R.D. at 391–392. The party moving for summary judgment bears the burden of demonstrating the absence of a genuine issue as to any material fact. *Adickes v. S. H. Kress & Co., supra*, 398 U.S. at 159–160, 90 S.Ct. 1598; *Scooper Dooper, Inc. v. Kraftco Corp.*, 494 F.2d 840, 848 (3rd Cir.1974). Until the movant has met this burden, his opponent is under no obligation to present any contradictory evidence to the court. *Adickes v. S. H. Kress & Co., supra*, 398 U.S. at 159–161, 90 S.Ct. 1598; *Gray v. Greyhound Lines, East*, 545 F.2d 169, 174 (D.C.Cir.1976). Once the proponent has met his burden of showing that no material issue of fact exists, the opponent may not rest upon the mere allegations of his pleadings but must set forth countervailing evidence, by a Fed.R.Civ.P. 56(e) affidavit, or otherwise, which demonstrates that there is a genuine issue for trial. *Adickes v. S. H. Kress & Co., supra*, 398 U.S. at 160 n.22, 90 S.Ct. 1598; *Gray v. Greyhound Lines, East, supra,*, 545 F.2d at 174.

 Applying the above standard to Penn Central's first argument, and after careful consideration of the pleadings, exhibits and affidavits submitted in support thereof, we hold that: (1) docket number 80312 does not apply to the railroad crossing in question; (2) PPUC application docket 61441 ("docket 61441") does apply to the railroad crossing in question; and (3) Saaybe has not limited himself to a theory of liability based solely upon Penn Central's violation of docket 80312.

Penn Central attached to its motion, *inter alia*, copies of docket 61441 (*see* Exhibit "B"), docket 80312 (*see* Exhibit "G"), and the affidavit of Stafford C. Walker (*see* Exhibit "H") which states that docket 61441, and not docket 80312, applies to the crossing in question. Saaybe has filed no evidence or documentation which disputes this factual assertion. On the basis of the uncontested documents submitted by Penn Central in support of its motion, we find that Penn Central has met its burden of conclusively demonstrating the fact that docket 61441, and not docket 80312, applies to the railroad crossing in question. Partial summary judgment in favor of Penn Central on the issue of the applicable PPUC docket will, therefore, be granted.

However, we decline to hold that by his qualified response to supplemental interrogatories numbered 25 and 40, or his pretrial memorandum, Saaybe has limited himself to a theory of liability based solely upon Penn Central's violation of docket 80312. Saaybe's complaint[5] states three separate causes of action against Penn Central. The complaint does not enumerate the PPUC docket number upon which his causes of action against Penn Central are based. Saaybe's qualified response to a supplemental interrogatory does not abrogate the well-pleaded allegations of his complaint. Because we find that Saaybe is not limited to a theory of liability against Penn Central based solely upon a violation of docket 80312, we find that Penn Central is not entitled to a judgment in its favor as a matter of law.

---

4. Rule 56 of the Federal Rules of Civil Procedure states, in pertinent part:

 . . . The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law . . . .

5. *See* note 1 *supra*.

Finally, we hold that Penn Central's argument that an alleged violation of docket 61441, which applies to the crossing in question, would amount to negligence and not to willful, wanton, reckless or intentional conduct is without merit. The conduct of Penn Central which resulted in this accident could be found by a jury to constitute willful, wanton, reckless or intentional conduct[6] and is a material issue of fact in this case. The evidence presented by Penn Central in support of its motion does not conclusively demonstrate that there is no material issue of fact as to whether the railroad's conduct was intentional,[7] or whether its conduct was willful, wanton or reckless under the circumstances of this case.[8] Since Penn Central has not carried its burden of proving conclusively that no material issue of fact exists, Saaybe is under no duty to present countervailing evidence. Having found that this issue presents a material issue of fact which must be preserved for the jury, *Briach v. Pennsylvania R. R.*, 462 F.2d 266, 268 (3d Cir. 1972); *Fugagli v. Camasi, supra*, 229 A.2d at 736, we will, accordingly, deny Penn Central's motion for summary judgment.

Appropriate Orders will be entered.

**6.** The Court notes that wanton, willful and reckless conduct are degrees of negligence. Prosser, *Torts*, Ch. 5, § 34 (4th ed.1971). "Wanton misconduct" is found where an actor has intentionally done an act of an unreasonable character, in disregard of a risk known to him or so obvious that he must be taken to have been aware of it, and so great as to make it highly probable that harm would follow. *Fugagli v. Camasi*, 229 A.2d 735, 736 (Pa.1967). Actual knowledge of the other person's peril is not necessary for one to be liable for wanton misconduct. *Id.* Contributory negligence is no defense to wanton misconduct. *Ibid.* "Willful misconduct" means that the actor desired to bring about the result that followed, or at least that he was aware that it was substantially certain to ensue. *Evans v. Philadelphia Trans. Co.*, 418 Pa. 567, 573–574, 212 A.2d 440, 443 (1965). Actual prior knowledge must be found before one may be found liable for willful misconduct. *Id.* "Reckless misconduct" means that the actor intentionally does an act or fails to do an act which it is his duty to the other to do, knowing *or having reason to know* of facts which would lead a reasonable man to conclude that such conduct creates an unreasonable risk of bodily harm to the other. *Id.* at 444; *Restatement (Second) of Torts* § 500 (1965). The crucial issue in determining liability under any one of these three categories is whether or not the actor had reason to know of the risk of harm created by his conduct. Whether or not Penn Central had reason to know that its conduct created an allegedly unreasonable risk of harm, either because of general information and knowledge stemming from an observation of the actual crossing, or from findings and warnings regarding the hazardous nature of the crossing found explicitly and/or impliedly in docket 61441, is thus a question of fact which cannot be answered solely upon the basis of Penn Central's assertions but which must be preserved for the jury.

**7.** Penn Central has submitted a copy of "Penn Central Transportation Company Timetable No. 10" (*see* Exhibit "I") and the supporting affidavit of Thomas L. Lockner (*see* Exhibit "J") in support of its argument that, since Penn Central had issued regulations to its employees ordering them to comply with docket 61441, its conduct could not have been intentional. These exhibits merely beg the question, and do not serve to convince the Court that there is no material issue of fact on the issue of whether or not Penn Central's conduct was intentional.

**8.** The Court notes that under Pennsylvania law the duty owed by a railroad to a motorist depends, *inter alia*, upon whether the train was actually in the grade crossing at the time of the accident, *see e. g. Yazvac v. Baltimore and Ohio R. R.*, 342 F.Supp. 161, 163 (W.D.Pa. 1972); *Cella v. Pennsylvania R. R.*, 364 Pa. 82, 70 A.2d 638, 639–640 (1950), or whether the train was approaching the grade crossing at the time of the accident, *see, e. g. McGlinchey v. Baker*, 356 F.Supp. 1134, 1140–1142 (E.D.Pa. 1973). The position of the train in this case at the time of the accident has not been conclusively demonstrated by the record before us and, therefore, remains a material question of fact for the jury (*see* Penn Central's Memorandum of Law at 2). Since the standard of care which applies to this case depends upon the jury's determination of this fact, and since under one of the potentially applicable standards of care the conduct of the railroad could be found by the jury to amount to willful, wanton, reckless or intentional conduct, summary judgment on these issues is inappropriate.