**Robert BRENNAN**

v.

**D. J. McNICHOL COMPANY.**

**Civ. A. No. 76–3957.**

United States District Court,
E. D. Pennsylvania.

Oct. 13, 1977.

F. Kirk Adams, Springfield, Pa., for plaintiff.

Jacob P. Hart, Philadelphia, Pa., for defendant.

## MEMORANDUM AND ORDER

BECHTLE, District Judge.

Presently before the Court is the motion of defendant D. J. McNichol Company ("McNichol") for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. The jurisdiction of this Court is based upon Section 301 of the Labor Management Relations Act of 1947, 29 U.S.C. § 185 (1970).

Defendant McNichol is a contract carrier whose sole customer is the A & P Company. From March 31, 1971, to July 12, 1974, plaintiff Robert Brennan ("Brennan") regularly operated a truck owned by McNichol in Delaware County, Pennsylvania. On or about July 12, 1974, Brennan delivered various goods and supplies to an A & P Company store in Llanerch, Pennsylvania. During the delivery, the manager of the store notified the Haverford Township Police Department that he observed Brennan attempting to steal merchandise from the shipment. The police stopped Brennan while he was driving away from the store and found the missing goods in the cab of his truck. Following his arrest on a charge of theft by unlawful taking,[1] Brennan was discharged by McNichol from his position as a truck driver.

In his complaint, Brennan avers that on the day of the arrest, July 12, 1974, McNi-

---

1. Harold D. Martin, McNichol's Labor Relations Manager, signed the criminal complaint (No. C–620–1974) against Brennan, and stated in his affidavit:

   On Friday, July 12, 1974, at approximately 5:30 pm, the above named defendant, Robert Brennan, operator of a truck tractor # 244, owned by D. J. McNichol, contract carriers for the A & P Company, did while making a delivery to the A & P at 401 West Chester Pike, Havertown, Pa. did [sic] take a case of Chicken of the Sea Tuna Fish, 3½ [sic] oz. each, 48 cans to a case, and 4 bags of Pistachio Nuts, A & P brand, 12 oz. to a bag and did take the above mentioned items and put them in a brown A & P bag and placed them in the cab of the tractor. The defendant then did proceed to unload other items consigned to the store. This act was witnessed. The defendant then proceeded to leave the area of the A & P store and was apprehended by the Haverford Township Police who were alerted by the store manager of the A & P, John McClarnon.

chol was a member of Food Employers' Labor Relations, Inc. ("FELR"), a unit of corporations, partnerships and other individual employers formed for collective bargaining purposes. [*See* complaint at ¶ 9.] FELR member companies entered into a collective bargaining agreement with Food Drivers, Helpers and Warehouse Men, Local No. 500 ("Union"). McNichol, as a member company of FELR, and Brennan, as a member of the Union,[2] were bound by the terms and conditions of the collective bargaining agreement between FELR and the Union, entitled the Master Food Agreement ("MFA").

In his complaint, Brennan states that he, the Union and McNichol orally agreed soon after the July 12, 1974, arrest to waive the grievance procedure outlined in Article 8. [*See* complaint at ¶ 13.] The essence of the alleged agreement was that the outcome of the pending criminal proceedings in the Delaware County Common Pleas Court would be dispositive of the matter of Bren-

nan's reinstatement. Specifically, Brennan asserts that it was understood that a verdict of guilty in the Criminal Court "would operate to terminate the plaintiff's employment with the Defendant-company and no grievance would be instituted or pursued on plaintiff's behalf." [*See* complaint at ¶ 14.] Likewise, an acquittal of the criminal charges "would automatically cause Plaintiff to be reinstated to his position as a truck driver with all back pay, rights and privileges to July 12, 1974." [*See* complaint at ¶ 15.]

All criminal charges were dismissed against Brennan on July 18, 1975, by a jury verdict of "Not Guilty." Shortly after his acquittal, Brennan applied to McNichol for reinstatement pursuant to the alleged oral agreement. When his application for reinstatement was denied by McNichol, Brennan requested his Union representative to initiate proceedings[3] under the "Grievance and Arbitration Procedure" of Article 8 of the MFA.[4] The FELR Joint Board decision

---

**2.** *See* complaint at ¶ 12. Article 2, section 1 of the MFA states, *inter alia:* "Employers recognize and acknowledge that the Union is the exclusive representative for truck drivers . . for the purpose of collective bargaining as provided by the N.L.R.A."

**3.** Brennan claims in paragraph 17 of his complaint that he was informed by McNichol's agents that "he would only be reinstated if the Defendant was required to do so by and through a successful pursuit of the grievance process allowed under Article 8 of the said Labor Contract."

**4.** Article 8, section 3 delineates the Grievance and Arbitration Procedure to be followed concerning the application or interpretation of the express terms of the MFA. Section 3 states as follows:

Grievances filed by either party shall be handled in the following manner:

Step 1. The Union Steward shall meet with a designated representative of the Employer within the time limits specified above in an effort to reach a mutually satisfactory solution.

Step 2. If the grievance is not resolved at Step 1, to be considered further it must be reduced to writing and taken up between the Business Agent of the Local Union involved and a designated representative of the Employer within ten (10) calendar days of the Step 1 meeting. All written grievances must specify the particular issue involved and the

particular provision of the contract alleged to have been violated. Failure of either party to meet within the prescribed time limits shall result in the grievance being sustained and the claims paid if the Employer or the Employer's representative fails to so meet, or the grievance shall be dismissed and forfeited if the Union representative fails to so meet.

Step 3. If, in Step 2, the Business Agent and the Employer or the Employer's representative do not reach a satisfactory agreement, the grieving party shall within ten (10) calendar days of Step 2 meeting, submit to the Secretary of the FELR Joint Board, a copy of the written grievance and a Request for Hearing of the FELR Joint Board, a copy of the written grievance and a request for hearing. The FELR Joint Board panel shall consist of an equal number of FELR and Local 500 representatives. Hearings on discharge cases shall be scheduled within five (5) days after the Joint Board secretary receives a copy of the grievance and a request for hearing. No Employer representative shall be a member of a Joint Board panel considering a case involving its own Company. The FELR Joint Board secretary shall schedule regular monthly hearings to be held on the third Thursday of each month. Every effort will be made to expedite the handling of discharge cases. The conduct of the hearing and the evidence submitted therein shall conform to the Joint Board Rules of Procedure.

of July 10, 1975, regarding Brennan's discharge was deadlocked. The unsettled matter was then submitted to a disinterested arbitrator who, on November 25, 1975, sustained the discharge and dismissed the Union's grievance.

In support of its motion for summary judgment, McNichol argues that (1) the decision of the arbitrator is *res judicata* and bars prosecution of the instant lawsuit; (2) principles of labor law favoring arbitration require that plaintiff's suit be barred; and (3) any oral agreement made by McNichol to reinstate Brennan if he were acquitted is null and void by virtue of the "Extra Contract Agreement" clause in the collective bargaining agreement.

To prevail upon its motion for summary judgment, McNichol must conclusively demonstrate to the Court that there is no genuine issue as to any material fact and that it is entitled to a judgment in its favor as a matter of law.[5] *Barron v. Honeywell, Inc., Micro Switch Div.,* 69 F.R.D. 390, 391 (E.D.Pa.1975); *see Saaybe v. Penn Central Trans. Co.,* 438 F.Supp. 65, 68 (E.D.Pa.1977). Inferences to be drawn from the underlying facts contained in the movant's materials "must be viewed in the light most favorable to the party opposing the motion." *Adickes v. S. H. Kress and Co.,* 398 U.S. 144, 158–159, 90 S.Ct. 1598, 1609, 26 L.Ed.2d 142 (1970), *citing U. S. v. Diebold, Inc.,* 369 U.S. 654, 655, 82 S.Ct. 993, 8 L.Ed.2d 176 (1962). This liberal construction by the Court provides the opposing party the benefit of all reasonable doubts and inferences in determining whether a genuine issue exists in fact which should be preserved for trial. *Barron v. Honeywell, Inc., Micro Switch Div., supra,* 69 F.R.D. at 391–392; *Saaybe v. Penn Central Trans. Co., supra,* 438 F.Supp. at 68. Once the proponent of the motion demonstrates the absence of a genuine issue of material fact, the burden shifts to the opponent to present countervailing evidence, by affidavits[6] or otherwise, to show the existence of such issues. *Adickes v. S. H. Kress and Co., supra,* 398 U.S. at 160, n.22, 90 S.Ct. 1598; *Saaybe v. Penn Central Trans. Co., supra,* 438 F.Supp. at 68.

Taking McNichol's last argument first, we find that the specific language of the collective bargaining agreement does not automatically render any oral agreement between the parties null and void. In addition to its emphatic denial of the existence of any oral agreement between the parties, McNichol argues that the MFA[7] bars enforcement, since the alleged oral modification: (1) conflicts with the "Arbitration and Grievance Procedure" of Article 8 [*see note*

---

The FELR must schedule a meeting within the time limits prescribed in this Article. If either Employer or Union fails to sit on the grievance panel, the case will be forfeited. Any postponements must be agreed to by the Union and Employer. When representatives of the Union and FELR agree on the disposition of a grievance, said decision shall be final and binding upon all parties.

Step 4. If the FELR Joint Board Panel shall disagree the party wishing to proceed further shall within ten (10) claendar [*sic*] days of the close of the Joint Board hearing, request that the unsettled matter be submitted to a disinterested arbitrator assigned from a rotating panel of arbitrators consisting of the following: [Names omitted.]

5. Fed.R.Civ.P. 56(c) states, *inter alia,* that a party is entitled to summary judgment only ". . . if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. . . ."

6. *See* Fed.R.Civ.P. 56(e) regarding the form of affidavits to be submitted in summary judgment matters.

7. The "Extra Contract Agreement" clause of Article 6, section 2 of the MFA states, *inter alia:*

Employer agrees not to enter into any Agreement or contract with his employees, individually or collectively, *which in any way conflicts* with the terms and provisions of this Agreement. Any such Agreement shall be null and void.

\* \* \* \* \* \*

There shall be no concessions or agreements of any kind between a particular Employer and a representative or representatives of Union. All such concessions or agreements may be made only between FELR and Union. [Emphasis added.]

4 *supra* ]; and (2) cannot exist without the knowledge or agreement of the FELR.[8]

In response, Brennan argues that, notwithstanding Articles 6 and 28 of the MFA, Article 8 allows the parties to formulate oral agreements to resolve grievances. Specifically, Brennan claims that the July, 1974, meeting and resultant oral agreement to await the outcome of Brennan's criminal trial was a "mutually satisfactory solution" within the meaning of Step 1 of the grievance procedure. [*See* note 4 *supra.*] In support of his argument, Brennan submitted the affidavit of William O'Farrell, Business Agent and Vice-President of Teamsters Local No. 500, which states, in pertinent part:

> It is routine for Union and Employers, including Defendant, to enter into oral agreements in cases involving grievances, suspension and discharge, and this agreement pertaining to Robert Brennan was not unusual. [Affidavit of William O'Farrell.]

The affidavit further states that Local No. 500 did not notify the designated representative of FELR of its intention to pursue the subsequent steps of the grievance-arbitration procedure because of the terms of the oral agreement to abide by the decision of the Delaware County Criminal Court. [Affidavit of William O'Farrell.]

■ By their language, Articles 6, 8 and 28 of the MFA are not mutually exclusive and independent portions of the contract. It is well settled that:

> A contract is to be considered as a whole, and, if possible, all its provisions should be given effect; while a contract's provisions must be interpreted with reference to the whole the specific controls the general; and a contract should be construed so as to give effect to its general purpose. *Capitol Bus Co. v. Blue Bird Coach Lines, Inc.,* 478 F.2d 556, 560 (3d Cir. 1973).

In addition to these principles of general contract construction, a collective bargaining agreement must be construed in the context of "the industrial common law—the practices of the industry and the shop—[which] is equally a part of the collective bargaining agreement although not expressed in it." *United Steelworkers of America v. Warrior and Gulf Navigation Company,* 363 U.S. 574, 581–582, 80 S.Ct. 1347, 1352, 4 L.Ed.2d 1409 (1960); *Ludwig Honold Mfg. Co. v. Fletcher,* 405 F.2d 1123, 1131 (3d Cir. 1969).

■ Upon careful consideration of the pleadings, memoranda and affidavits, we find that Step 1 "efforts to reach a mutually satisfactory solution" of a grievance are harmonious with the restrictive "Extra Contract Agreement" clause. Article 8, section 3 provides the contractual basis upon which Brennan's oral agreement rests. The alleged existence of an oral agreement between the parties which would reinstate Brennan without further pursuit of the grievance-arbitration procedure is a genuine existence of material fact which precludes the granting of McNichol's motion for summary judgment.

■ McNichol next argues that the decision of the arbitrator is *res judicata* and bars prosecution of the instant lawsuit. The thrust of McNichol's argument is that a contractual provision stating that a decision of an arbitrator is "final and binding"[9] should bar reconsideration of the dispute fully decided on the merits.

There has been no evidence presented to the Court that Arbitrator Horlacher was informed of any alleged oral agreement between the parties. Indeed, McNichol vigorously argues that Brennan's conspicuous failure to advance the terms of the alleged oral agreement during any stage of the grievance-arbitration procedure should pre-

---

8. In addition to Article 6, McNichol argues pursuant to Article 28, section 4 of the MFA that any *oral* agreement made on Brennan's behalf cannot be considered binding upon McNichol, since it was made without the involvement of the FELR and was never reduced to a written concession.

9. Article 8, section 7 of the MFA provides, in pertinent part:

> The decision of the arbitrator shall be final and binding upon all parties. . . . .

clude Brennan from further litigation in this Court.

In both the Step 3 FELR Joint Board decision and the Step 4 arbitration, the issue primarily focused on whether McNichol had just cause to discharge Brennan. Ancillary arguments regarding "proven theft," burdens of proof, and the use of circumstantial evidence were directed to the issue of Brennan's guilt or innocence of the charge of theft. In essence, the character of the Grievance and Arbitration Procedure beyond the alleged Step 1 oral agreement was analogous to the earlier criminal proceedings. The existence of a post-arrest oral agreement between the parties has no relevance to the issue of whether McNichol had just cause to discharge Brennan on July 12, 1974.[10] Arbitration of the issues of Brennan's guilt and McNichol's just cause for discharge does not destroy the rights Brennan preserved under the conditional promise of reinstatement. An argument of *res judicata* of the issue of Brennan's guilt is not appropriate in an equity suit for specific performance of an oral contract which would have operated independent of, and prior to, arbitration.

█ McNichol's final argument is that the principles of labor law favoring arbitration require that Brennan's suit be barred. Federal policy favoring arbitration of labor disputes, *Gateway Coal Co. v. United Mine Workers of America*, 414 U.S. 368, 377, 94 S.Ct. 629, 38 L.Ed.2d 583 (1974), is based upon Section 203(d) of the Labor Management Relations Act of 1947, 29 U.S.C. § 173(d) (1970):

> Final adjustment by a method agreed upon by the parties is declared to be the desirable method for settlement of grievance disputes arising over the application or interpretation of an existing collective bargaining agreement.

In *United Mine Workers of America, District No. 2 v. Barnes and Tucker Co.*, 561 F.2d 1093, 1096 (3d Cir. 1977), the Third Circuit discussed the issue of judicial enforcement of general assurances made by an employer as a part of grievance settlements. Judge Rosenn stated therein:

> It is not arbitration per se that federal policy favors, but rather final adjustment of differences by a means selected by the parties. If the parties agree that a procedure other than arbitration shall provide a conclusive resolution of their differences, federal labor policy encourages that procedure no less than arbitration. A determination made pursuant to that chosen procedure is no less enforceable in a federal court than is an arbitration award. *United Mine Workers of America, District No. 2 v. Barnes and Tucker, supra,* at 1096.

Under the terms and conditions of the MFA, the "Grievance and Arbitration Procedure" of Article 8, *supra* note 4, constitutes the means selected by the parties for the final adjustment of differences. Brennan avers that the alleged Step 1 oral agreement would have provided a conclusive resolution of the issue of reinstatement but for McNichol's breach. If the alleged contract had not been breached, there would have been no need for arbitration since that Step 1 agreement would have been "no less enforceable in a federal court than is an arbitration award." *United Mine Workers of America, District No. 2 v. Barnes and Tucker, supra,* at 1096.

Brennan has demonstrated the existence of a genuine issue of material fact; namely, whether or not the parties made a Step 1 oral agreement that hinged Brennan's reinstatement on the outcome of the criminal trial.[11] Since this material issue must be

---

**10.** In fact, Arbitrator Horlacher attached little significance to the criminal proceedings and the resultant acquittal. In addressing the merits of whether Brennan committed the theft, the arbitrator regarded the criminal acquittal "as a disavowing of my responsibility as an arbitrator, should I allow [it] to influence me." Arbitrator's Opinion, dated November 25, 1975, at p. 6.

**11.** If the Court finds at trial that an oral agreement was, in fact, made by the parties, it must then determine whether it contained the specificity and certainty that are prerequisites to judicial enforcement. *United Mine Workers of America, District No. 2 v. Barnes and Tucker, supra,* at 1099.

preserved for the finder of fact at trial, *Briach v. Pennsylvania Railroad Co.,* 462 F.2d 266, 268 (3d Cir. 1972), we will, accordingly, deny defendant McNichol's motion for summary judgment.

An appropriate Order will be entered.