**HEDGES ENTERPRISES, INC.**

v.

**CONTINENTAL GROUP, INC., American Bag & Paper Corp., Chase Bag Company, Harley Corporation, St. Regis Paper Company.**

Civ. A. No. 78–1254.

United States District Court,
E. D. Pennsylvania.

Jan. 8, 1979.

Seymour Kurland, Harold E. Kohn, David Berger, Philadelphia, Pa., for plaintiff.

John Markle, Jr., Edward C. German, Henry T. Reath, Benjamin M. Quigg, Jr., Ralph W. Brenner, Philadelphia, Pa., for defendants.

## MEMORANDUM OPINION

BECHTLE, District Judge.

Presently before the Court are: (1) the motions of defendants Continental Group, Inc. ("Continental"), American Bag and Paper Corporation ("American"), Chase Bag Company ("Chase") and Harley Corporation ("Harley") for summary judgment, pursuant to Fed.R.Civ.P. 56, against plaintiff Hedges Enterprises, Inc. ("Hedges"), on the grounds that Hedges has not been injured as required by Sections 4 and 16 of the Clayton Act, 15 U.S.C. §§ 15 and 26, respectively; and, (2) Hedges' motion to pursue discovery, pursuant to Fed.R.Civ.P. 56(f).[1] For the reasons stated below, defendants' motions will be denied and Hedges' motion will be dismissed without prejudice on grounds of mootness in light of our ruling upon the defendants' motions.

The background of this case is as follows: On October 29, 1976, in Criminal No. 76–514, Continental, American, Chase and Har-

ley, together with several codefendants and unindicted coconspirators, were charged in a one-count indictment with having engaged in a continuing combination and conspiracy in unreasonable restraint of interstate trade and commerce, in violation of Section 1 of the Sherman Act, 15 U.S.C. § 1 ("criminal case"). The indictment charged that the combination and conspiracy consisted of a continuing agreement, understanding and concert of actions among the defendants and coconspirators, the substantial terms of which were to raise, fix, maintain and stabilize the prices and the terms and conditions for the sale of consumer bags. Consumer bags were defined in the indictment as follows:

> Consumer bags, also known in the trade as "small bags," are made from one or more plies of paper and may be combined with other materials used as linings and/or coatings. Consumer bags are preformed by the manufacturer in many styles and sizes according to customer specifications. Most consumer bags have printed exterior designs as specified by the customer. Consumer bags are designed for capacities of less than twenty-five pounds. They are normally used to pre-package products which are then marketed in such bags.

> Consumer bags are used for packaging a variety of products including, among others, pet foods, cookies, tea, coffee, kitty litter, chemicals, and agricultural products. Consumer bags also include air-sickness bags.

This definition of consumer bags was then clarified by the Government's Voluntary Bill of Particulars, which indicated that the bags which were "listed in and/or the prices of which [were] published in, determined, by or compiled from" certain specified price lists of the defendants were consumer bags. *See* Voluntary Bill of Particulars, Criminal No. 76–514, ¶ 2. The conspiracy and combination with which the defendants were

---

1. Fed.R.Civ.P. 56(f) states:

   (f) *When Affidavits are Unavailable.* Should it appear from the affidavits of a party opposing the motion that he cannot for reasons stated present by affidavit facts essential to justify

his opposition, the court may refuse the application for judgment or may order a continuance to permit affidavits to be obtained or depositions to be taken or discovery to be had or may make such other order as is just.

charged in the criminal case was alleged in the indictment to have begun as early as 1950 and to have continued until the date of the return of the indictment on October 29, 1976. Pleas of *nolo contendere* were entered by Harley on December 10, 1976, and by, *inter alia,* American on June 1, 1977. On November 23, 1977, after a trial before this Court, a jury returned a verdict of guilty as to, *inter alia,* Continental and Chase.

While the criminal case was pending, civil class actions were filed by, *inter alia,* Thornton-Minor McCleary Ointment Co., Inc. ("Thornton"), a wholly-owned subsidiary of Hedges, which named as defendants, *inter alia,* Continental, American, Chase and Harley ("civil cases"). The complaints in the civil cases alleged that the plaintiffs were direct purchasers of consumer bags from the defendants and that, by reason of the defendants' conduct in violation of § 1 of the Sherman Act, they had been injured in their trade or business. The definition of "consumer bag" contained in the complaints in the civil cases was identical to the definition of "consumer bag" contained in the indictment in the criminal case. Each of the plaintiffs in the civil cases sought relief pursuant to Sections 4 and 16 of the Clayton Act, 15 U.S.C. §§ 15 and 26, respectively. The defendants in the civil cases filed motions for summary judgment, pursuant to Fed.R.Civ.P. 56, against Thornton and the other civil plaintiffs. In an Order dated April 5, 1978, this Court granted defendants' motions for summary judgment as to each of the civil plaintiffs. The Order of April 5, 1978, stated, *inter alia* :

1. The motion of defendants for summary judgment, pursuant to Fed.R.Civ.P. 56, against plaintiffs Thornton-Minor McCleary Ointment Company; Mid-West Paper Products Company; Shopping Cart, Inc.; Vassallo Brothers, Inc.; 86th Street Food Specialty, Inc.; C. G. Dairies, Inc., and 3J's Farms, Inc., on the ground that they did not purchase consumer bags directly from the defendants, is hereby granted. *See Illinois Brick Co. v. State of Illinois,* 431 U.S. 720 [97 S.Ct. 2061, 52 L.Ed.2d 707] (1977).

2. The motion of defendants for summary judgment, pursuant to Fed.R.Civ.P. 56, against plaintiff Sambo's Restaurants, Inc., on the ground that the paper bag it purchases is not a "consumer bag," is hereby *granted.*

*See* Order of April 5, 1978, Civil Action No. 76–3407, etc., ¶¶ 1, 2.

On April 14, 1978, Hedges filed the instant complaint. In its complaint, Hedges alleges claims based upon Sections 4 and 16 of the Clayton Act, 15 U.S.C. §§ 15 and 26, respectively, against Continental, American, Chase and Harley and seeks relief in the form of treble damages, costs and injunctive relief for itself and the members of the class it seeks to represent. More specifically, Hedges' complaint alleges that it was injured in the course of its business within the meaning of Sections 4 and 16 of the Clayton Act in that it purchased consumer bags directly from one or more of the defendants for use by its wholly-owned subsidiary Thornton and that, beginning at least as early as 1950 and continuing until at least November, 1976, the defendants and coconspirators:

engaged in a continuing combination and conspiracy in unreasonable restraint of . . . interstate trade and commerce in violation of Section 1 of the Sherman Act . . . [which] consisted of a continuing agreement, understanding and concert of action among the defendants and co-conspirators . . . the substantial terms of which were to raise, fix, maintain and stabilize the prices and terms and conditions of sale of consumer bags.

Complaint, ¶¶ 12, 13. Hedges' complaint defines "consumer bag" as follows:

Consumer bags, also known in the trade as "small bags", are made from one or more plies of paper and may be combined with other materials used as linings and/or coatings. Consumer bags may have printed exterior designs as specified by the customer and are generally designed for capacities of less than twenty-five pounds. They are normally used to prepackage products which are then marketed in such bags.

Consumer bags are used for packaging a variety of products such as those sold by plaintiff herein and include, among others, pet foods, cookies, tea, coffee, kitty litter, chemicals and agricultural products.

*See* Complaint, Civil Action No. 78–1254, ¶¶ 9, 10.

In support of their motions for summary judgment, the defendants argue that they are entitled to a judgment in their favor as a matter of law with respect to Hedges' claims pursuant to both § 4 and § 16 of the Clayton Act because Hedges has not been injured within the meaning of either of those sections. With respect to Hedges' claims pursuant to § 4, the defendants argue that the bag purchased by Hedges from the defendants is a "stock bag"[2] and not a "consumer bag" and that, since Hedges' complaint claims that it was injured by an alleged conspiracy among the defendants to fix the price of consumer bags, Hedges has not been injured in its business or property by the alleged conduct of the defendants as required by § 4 of the Clayton Act. The legal reasoning presented to this Court in support of the defendants' arguments that the bag purchased by Hedges is a "stock bag" and not a "consumer bag" is, *inter alia,* that:

On April 5, 1978, this Court granted defendants' Motions for Summary Judgment as to Thornton-Minor McCleary Ointment Co., Civil Action 76–3407; Mid-West Paper Products Co., Civil Action 76–3935 and Sambo's Restaurants, Inc., Civil Action 76–3407. The grounds asserted by defendants in *Thornton-Minor* were that the plaintiff, Hedges' subsidiary, did not purchase any bags, and that the bag in question—a stock bag without printing—was not a consumer bag. In granting these motions the Court accepted the industry definition of consumer bags as reflected in the Bill of Particulars, and rejected plaintiffs' arguments that a machine parts bag, (Midwest), and

grocery bag (Sambo's) were consumer bags.[8]

*See* Memorandum in Support of Defendants' Motion for Summary Judgment at 3, 4. Footnote 8 to defendants' reasoning states:

8. After having granted summary judgment (see Orders of April 5, 1978 in Civil Action 76–3407 et al), and following two criminal trials involving the same alleged conspiracy, the definition of consumer bags has been accepted by this Court in those cases and, becomes the law of the case for this case. The "law of the case" doctrine

is a rule of practice, based on sound policy that, when an issue is once litigated and decided, that should be the end of the matter . . . . The unreversed decision on a question of law or fact made during the course of litigation settles that question for all subsequent stages of the suit.

*Id.,* at 4 (citations omitted). In essence, the defendants argue that this Court has adopted as "the law of the case" a definition of a "consumer bag" which not only conforms precisely to the definition of a "consumer bag" contained in both the criminal case and the civil cases, but also limits a "consumer bag" to a bag which is manufactured according to customer specifications, is not printed and is not priced from a consumer bag price list.

With respect to Hedges' claims based upon § 16 of the Clayton Act, the defendants argue first that, since the bag purchased by Hedges is a "stock bag" and not a "consumer bag," Hedges is not threatened with any loss or damage proximately resulting from the defendants' alleged conspiratorial conduct to fix the prices of consumer bags and that, therefore, Hedges lacks standing to bring an action against the defendants pursuant to § 16 of the Clayton Act. Second, the defendants argue that:

2. The Court takes judicial notice of the fact that a "stock bag" is a "consumer bag" which is purchased from inventory and is, therefore, not manufactured according to customer specifications, and is generally not printed or priced from a consumer bag price list.

. . . the government has filed a civil action, seeking, *inter alia,* injunctive relief, the same relief sought by the plaintiff under § 16. Because plaintiff's complaint does little more than parrot the government's language in the indictment and companion civil case, it is manifestly clear that plaintiff and the class it seeks to represent will be adequately protected, in terms of injunctive relief, by the government's civil action. Thus, plaintiff is not threatened with "irreparable injury".

*Id.* at 17 (citations omitted).

■ We find that the arguments and legal reasoning presented to this Court by the defendants in support of their motions for summary judgment are specious, frivolous and totally without merit; and we hold, after a thorough review of the pleadings, exhibits and memoranda of law submitted by the defendants in support of their motions for summary judgment, that the defendants have not met their burden of establishing that there is no issue of material fact and that they are entitled to a judgment in their favor as a matter of law with respect to the issues of whether Hedges has been injured as required by Sections 4 and 16 of the Clayton Act, 15 U.S.C. §§ 15 and 26, respectively. *See Saaybe v. Penn. Central Trans. Co.,* 438 F.Supp. 65, 68 (E.D. Pa.1977); Fed.R.Civ.P. 56. First, in ruling upon the defendants' motions for summary judgment in the civil cases, this Court stated only that the bag purchased by Sambo's Restaurants, Inc. ("Sambo's"), was not a "consumer bag." *See* Order of April 5, 1978, Civil Action No. 76–3407, ¶ 2. By no stretch of the imagination can this Court's Order of April 5, 1978, be construed as having either adopted the arguments asserted by the defendants in support of their motions for summary judgment in the civil cases or as having adopted the definition of "consumer bags" as that term was defined in either the criminal case or the civil cases. Furthermore, the plain meaning of the definition of "consumer bag" in either the criminal case or the civil cases does not limit a "consumer bag" to a bag that is manufactured according to customer specifications, is not printed and is sold from consumer bag price lists. Moreover, even if this Court had so limited the definition of a "consumer bag," the bags submitted to the Court by Hedges as exhibits in support of its memorandum in opposition to defendants' motions for summary judgment include not only "stock bags" but also "consumer bags," *i. e.,* bags which have a printed exterior design and which Hedges alleges were printed according to their specifications and priced from the defendants' consumer bag price lists. *See, e. g.,* Hedges' Exhibits 18, 19. Second, even assuming *arguendo* that the doctrine of "the law of the case" applies to the instant case, a proposition which is by no means clear, *see generally* 1B Moore's *Federal Practice,* ¶ 0.404 (2d Ed. 1978), there is no "law" in this case which defines a "consumer bag." This Court's Order of April 5, 1978, which, *inter alia,* granted summary judgment against Sambo's on the ground that the bag purchased by Sambo's was not a consumer bag, most emphatically did not define "consumer bag." Rather, the most that can be inferred from this Court's April 5, 1978, Order is that the bag purchased by Sambo's was not a "consumer bag" under *any* definition of a "consumer bag," however narrowly or broadly construed.

■ Third, because the defendants have failed to satisfy their burden of establishing that the bags purchased by Hedges are not "consumer bags," their argument that Hedges lacks standing to assert a claim pursuant to § 16 of the Clayton Act, which is logically dependent upon their argument that Hedges did not purchase a "consumer bag," is without merit. Finally, the fact that the Government has filed a separate and distinct action pursuant to § 16 of the Clayton Act against the identical defendants as those named in the instant case has no relevance whatsoever to the issue of whether Hedges or the class it seeks to represent are entitled to injunctive relief against the defendants' alleged conduct, particularly since the Government's action is still pending before this Court.

Accordingly, for the reasons stated above, defendants' motions for summary judgment, pursuant to Fed.R.Civ.P. 56, will be denied.

■ Finally, turning to Hedges' motion to pursue discovery, pursuant to Fed.R. Civ.P. 56(f), we note that in its memorandum in opposition to defendants' motions for summary judgment, Hedges explicitly states that its motion to pursue discovery was filed as an alternative to its memorandum in opposition to defendants' motions for summary judgment in the event that this Court was persuaded to grant defendants' motions. We hold, therefore, that in light of this Court's ruling upon the defendants' motions for summary judgment, Hedges' motion to pursue discovery is moot. Accordingly, Hedges' motion to pursue discovery, pursuant to Fed.R.Civ.P. 56(f), will be dismissed without prejudice.

An appropriate Order will be entered.