Patricia A. HOLLINGER, Administratrix of the Estate of Germaine S. Hollinger

v.

WAGNER MINING EQUIPMENT COMPANY, a division of Paccar, Inc.

Civ. A. No. 77-4343.

United States District Court,
E. D. Pennsylvania.

Jan. 13, 1981.

Joseph Lurie, Philadelphia, Pa., for plaintiff.

David L. Grove, Philadelphia, Pa., for defendant.

## MEMORANDUM

TROUTMAN, District Judge.

While drilling and blasting oversized chunks of ore in an iron mine in Morgantown, Pennsylvania, plaintiff's decedent left his helper without speaking to him and walked in the direction of a powder storage area. As he proceeded, a scooptram[1] operator spotted him, noted his progress, but afterward lost sight of him and assumed he had entered a manway. After passing this point, the scooptram operator, feeling resistance from the unit, lifted the bucket on the vehicle to eliminate the apparent difficulty. When he reached his destination, the water valve, he looked back and saw lying in the drift the lifeless body of plaintiff's decedent who had been struck and killed by the scooptram.[2] Plaintiff instituted this action to recover damages and based liability on the theory that defendant sold the scooptram in an unsafe condition as defined by the Restatement (Second) of Torts, Section 402A.[3] Plaintiff posited that at the time of

---

1. A scooptram, also known as an LHD (load-haul-dump) unit, is a trackless, low profile diesel powered vehicle used to transport earth and ore in underground mines.

2. Hartz Deposition at 4–5. Defendant manufactured the scooptram in 1969 and sold it to the employer of plaintiff's decedent later that year.

3. Originally plaintiff alleged

[9.] [n]egligence of the defendant, consist[ing], inter alia, of the following acts and omissions:

(a). failing to design, manufacture and sell the load, haul and dump unit in a reasonably safe condition;

(b). failure to test the said load, haul and dump unit to determine whether it could be used without injury to those persons who would use and work with and near it;

(c). failure to adequately instruct as to the proper use of the load, haul and dump unit;

(d). failure to adequately warn employees of Bethlehem Steel [sic] and others of the dangerous [sic] and hazards attendant upon the use of the said load, haul and dump unit;

(e). negligence in fact and in law

(f). such negligence and prior negligence as discovery may develop.

[10.] The injuries and damages sustained by the plaintiff and the death of decedent were caused by the fact that the load, haul and dump unit was defective and unreasonably dangerous for the reasonably foreseeable uses when sold by Wagner Mining Equipment Co., and that they wantonly subjected the decedent to severe injuries and death while the aforesaid load, haul and dump unit was being used in the intended manner.

[11.] At a time or times well known to defendant but unknown to plaintiff, the defendant warranted by implication that its products and services were safe for use, fit for the purposes intended and were of merchantable quality.

[12.] At a time or times known to the defendant, but unknown to the plaintiff, defendant represented and in another manner expressed warranties that the load, haul and dump unit was safe for use, fit for the purposes intended and of merchantable quality.

[13.] The said representations and warranties form part of the sales bargain of the said load, haul and dump unit between defendant and decedent's employer and were relied upon by decedent's employer and decedent.

[14.] In truth and in fact, the said representations and warranties were false.

[15.] That as a direct and proximate result of the aforesaid negligence, gross negligence, wantonness, carelessness and aforesaid defective condition as well as the breach of the aforementioned warranties the decedent sustained severe injuries which caused him great pain and suffering and which resulted in his death.

Responding to interrogatories plaintiff further explained that

[t]he load, haul and dump unit in question was designed, manufactured and sold in a defective condition in that it did not contain either an audible or visual warning device with which to warn the other workers of the approach of the said unit. The necessity of an audible warning device was especially applicable where it is foreseeable that the operator of the LHD unit might be unable to see other workers due to diminished visibility in the underground mine.

Apparently plaintiff then learned that defendant had equipped the scooptram with a horn at the time of sale and supplemented defendant's interrogatories with these answers:

[20–23.] Plaintiff intends at the time of trial to withdraw any allegations based upon negligence. *The case will be solely tried on the basis of the allegation that when the load, haul and dump unit was sold by defendant, it was sold in an unsafe condition as defined by Section 402A of the Restatement of Torts* [Second].

[24.] At the time the load, haul and dump unit was sold, it failed to contain an automatic warning device which did not require a manual activation by the operator and which would warn persons in the area where the unit was being operated of the presence of the unit in spite of the fact that the vision of the operator of the unit might be obscured so as not to

sale defendant failed to provide the vehicle with an *automatic* warning device alerting persons in the area to the presence and operation of the vehicle. Defendant, now moving for summary judgment, contends that this alleged defect in the scooptram was not the proximate cause of death, that at the time of the accident the scooptram had undergone a substantial change in condition from the time defendant sold the unit, and that at the time of sale the scooptram was not in a defective and unreasonably dangerous condition.

The Federal Rules of Civil Procedure direct the court to enter summary judgment if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.[4]

Characterized as both a "drastic"[5] and "extreme"[6] remedy, summary judgment should be used "sparingly",[7] for it is a "lethal weapon"[8], eliminating the opportunities to assess the demeanor and credibility of witnesses[9] as well as to examine and cross-examine them in front of a jury.[10] However, where no genuine issues of material fact exist and as a matter of law the

permit him to observe the presence of such persons.

[25.] The fact that the load, haul and dump unit in question did not contain an *automatically* activated warning device, which warned people in the vicinity of the use of the unit prevented the decedent from perceiving and understanding the presence of the unit, and therefore prevented him from taking such protection as he would have had he heard the presence of the unit, to prevent himself from being injured and killed.

However, plaintiff's proposed expert testified during depositions in the following way:

Q. For what purpose do you believe that horns are put on vehicles—on a car, or a truck?

A. They are warning devices.

Q. I take it you would have to agree that if this unit had been equipped with a horn at the time of the accident and if by the use of that horn the driver of this unit had signaled to anybody who might be around that he was not going to return to the passage where he had been mucking but intended to go beyond that turn-off to another point in the mine, for whatever purpose he might have been going there, that that might have alerted [the decedent] that the vehicle was coming in his direction?

A. I say in answer to that question, that if the operator could see [the decedent] and honk the horn, fine; but I believe that in order to honk the horn he would have to see [the decedent] and the problem with this accident is, to the best of my analysis, he never saw [the decedent].

Q. Well, let us assume that at some point, several hundred feet from the point of impact, the driver had seen a person in the passageway, whoever, whether he knew it was [the decedent] or someone else, then proceeded down the passageway and instead of turning off where he had been, was going to go straight ahead and came to a point where, because of the configuration of the shaft, his headlights would not illuminate somebody in front of him, and at that point had blown the horn. In your opinion, might [the decedent] have gotten out of the way, assuming he was physically capable of doing so and was not otherwise deep in thought?

A. If you assume all those things and he heard the horn beeping at him, sure, he would get out of the way or he would turn around and signal him.

Barbe Deposition at 32–33.

4. Fed.R.Civ.P. 56(c). *See also Poller v. Columbia Broadcasting System*, 368 U.S. 464, 82 S.Ct. 486, 7 L.Ed. 458 (1962).

5. *Redhouse v. Quality Ford Sales, Inc.*, 511 F.2d 230, 234 (10th Cir. 1975); *Tomalewski v. State Farm Life Insurance Co.*, 494 F.2d 882, 884 (3d Cir. 1974).

6. *City National Bank of Fort Smith v. Vanderboom*, 422 F.2d 220, 223 (8th Cir.), *cert. denied*, 399 U.S. 905, 90 S.Ct. 2196, 26 L.Ed.2d 560 (1970); *Jacobson v. Maryland Casualty Co.*, 336 F.2d 72, 74 (8th Cir. 1964), *cert. denied*, 379 U.S. 964, 85 S.Ct. 655, 13 L.Ed.2d 558 (1965).

7. *Giordano v. Lee*, 434 F.2d 1227, 1230 (8th Cir. 1970), *cert. denied*, 403 U.S. 931, 91 S.Ct. 2250, 29 L.Ed.2d 709 (1971).

8. *Brunswick Corp. v. Vineberg*, 370 F.2d 605, 612 (5th Cir. 1967).

9. *Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970).

10. *Arnstein v. Porter*, 154 F.2d 464 (2d Cir. 1946). However, where, as here, the parties have taken depositions the opportunity for cross-examination exists. *Radio City Music Hall Corp. v. United States*, 135 F.2d 715 (2d Cir. 1943).

moving party deserves entry of judgment, the court should render it in order to eliminate sham issues of fact,[11] to allow the Court to pierce the pleadings and assess the proof to determine whether a genuine need for trial exists,[12] and to avoid waste of time and resources of both the litigants and the Court where trial would be a useless formality.[13]

Courts resolve doubts against the moving party,[14] who has the burden of demonstrating the justification for the motion.[15] When the movant has supported his motion with proper material, the party resisting the motion must adduce "specific facts showing that there is a genuine issue for trial".[16] That is, he must "present countervailing evidence, by affidavit or otherwise, to show the existence of such issues".[17] Suspicions,[18] conjecture,[19] speculation,[20] conclusory statements,[21] and general denials[22] will not suffice to avoid summary judgment. Failure to do so can result in granting the motion,[23] which, however, will be construed in the light most favorable to the non-moving party.[24]

Courts exercise discretion only in denying summary judgment in a particular situation[25] and use fastidious caution in granting it.[26] The responsibility belongs to the Court to review *all* facts to determine whether a genuine issue exists as to any

11. *United States v. Gossett*, 416 F.2d 565 (9th Cir. 1969), *cert. denied*, 397 U.S. 961, 90 S.Ct. 992, 25 L.Ed.2d 253 (1970).

12. *Gauck v. Meleski*, 346 F.2d 433 (5th Cir. 1965).

13. *Goodman v. Mead Johnson & Co.*, 534 F.2d 566 (3d Cir. 1976), *cert. denied*, 429 U.S. 1038, 97 S.Ct. 732, 50 L.Ed.2d 748 (1977), *Radobenko v. Automated Equipment Corp.*, 520 F.2d 540 (9th Cir. 1975).

14. *United States ex rel. Jones v. Rundle*, 453 F.2d 147 (3d Cir. 1971), *Janek v. Celebrezze*, 336 F.2d 828 (3d Cir. 1964), *Krieger v. Ownership Corp.*, 270 F.2d 265 (3d Cir. 1959).

15. *Adickes v. S. H. Kress & Co., supra, Krieger v. Ownership Corp., supra, F.A.R. Liquidating Corp. v. Brownell*, 209 F.2d 375 (3d Cir. 1954).

16. Fed.R.Civ.P. 56(e), *Robin Construction Co. v. United States*, 345 F.2d 610 (3d Cir. 1965). *Cf. First National Bank v. Cities Service Co.*, 391 U.S. 253, 289, 88 S.Ct. 1575, 1592, 20 L.Ed.2d 569 (1968) ("sufficient evidence supporting the claimed factual dispute [must] be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial").

17. *First National Bank v. Cities Service Co., supra. Cf. Brennan v. D. J. McNichol Co.*, 439 F.Supp. 499, 502 (E.D.Pa.1977) ("[o]nce the proponent of the motion demonstrates the absence of a genuine issue of material fact the burden shifts to the opponent to present countervailing evidence . . . to show the existence of such issues"), *Mogul v. General Motors Corp.*, 391 F.Supp. 1305, 1307 (E.D.Pa.1975), *aff'd*, 527 F.2d 645 (3d Cir. 1976) (the party resisting the motion must show "significant probative evidence tending to support the complaint"), *Lucas v. Philco-Ford Corp.*, 380 F.Supp. 139, 143 (E.D.Pa.1974) (party opposing motion "must submit sufficient evidence supporting a claimed factual dispute to demonstrate that a judge or jury is required to resolve the parties' differing versions of the truth at trial").

18. *Robin Construction Co. v. United States, supra.*

19. *United States v. Donolon*, 355 F.Supp. 220 (D.Del.), *aff'd*, 487 F.2d 1395 (3d Cir. 1973).

20. *First National Bank v. Cities Service Co., supra.*

21. *Olympic Junior, Inc. v. David Crystal, Inc.*, 463 F.2d 1141 (3d Cir. 1972).

22. *Tripoli Co. v. Wella Corp.*, 425 F.2d 932 (3d Cir.), *cert. denied*, 400 U.S. 831, 91 S.Ct. 62, 27 L.Ed.2d 62 (1970).

23. *Tilden Finance Corp. v. Palo Alto Service, Inc.*, 596 F.2d 604 (3d Cir. 1979), *Tunnell v. Wiley*, 514 F.2d 971 (3d Cir. 1975), *Sears, Roebuck & Co. v. Jardel Co.*, 421 F.2d 1048 (3d Cir. 1970), *Martinez v. Bethlehem Steel Corp.*, 496 F.2d 1002 (E.D.Pa.1979, *aff'd*, 633 F.2d 210 (3d Cir. 1980).

24. *Adickes v. S. H. Kress & Co., supra, United States v. Diebold*, 369 U.S. 564 (1962), *Drexel v. Union Prescriptions Center, Inc.*, 582 F.2d 781 (3d Cir. 1978).

25. *McSurely v. McClellan*, 521 F.2d 1024, 172 U.S.App.D.C. 364 (1975), *Taylor v. Rederi A/S Volo*, 374 F.2d 545 (3d Cir. 1967). *See* 6 *Moore's Federal Practice* ¶ 56.15[6].

26. *Bryson v. Brand Insulations, Inc.*, 621 F.2d 556 (3d Cir. 1980), *Season-All Industries, Inc. v. Turkiye Sise Ve Cam Fabrikalari*, 425 F.2d 34 (3d Cir. 1970), *Morrison Season Flying Service v. Deming National Bank*, 340 F.2d 430 (10th Cir. 1965).

*material* fact,[27] which may be defined as one which affects the outcome of the litigation.[28] Particularly where plaintiffs seek recovery under Section 402A as adopted and interpreted by Pennsylvania courts [29] this requirement does not encroach upon the role at trial of the factfinder, whether judge or jury.[30] Similarly, even though a jury ordinarily determines proximate cause "where the parties do not dispute the critical facts and only their legal effect remains in issue the court properly should rule on the question".[31]

■ In the case at bar defendant contends that plaintiff cannot demonstrate sufficient evidence to create a genuine issue as to the material fact that the alleged defect in the scooptram did not cause the death of plaintiff's decedent. Plaintiff predicates li-

ability on the lack of an automatic warning device not requiring manual activation to warn persons that the scooptram was nearby.[32] This omission, plaintiff argues, prevented plaintiff's decedent from perceiving the presence of the unit and taking measures to avoid injury.[33] However, at the time that defendant sold the scooptram it had a horn, which could have been used to warn plaintiff's decedent.[34] Assuming for the moment that the scooptram was defective at the time of sale, plaintiff would nonetheless still need to prove that the defect constituted the proximate cause of the injuries suffered by plaintiff's decedent.[35] Plaintiff assumes that an automatically activated warning device would have prevented this accident.[36] The driver testified that

**27.** *British Airways Board v. Boeing Co.*, 585 F.2d 946 (9th Cir. 1978), *cert. denied*, 440 U.S. 981, 99 S.Ct. 1790, 60 L.Ed.2d 241 (1979). The Court should not, on the other hand, find issues of fact where none, in reality, exist. *Lockhart v. Hoenstine*, 411 F.2d 455 (3d Cir.), *cert. denied*, 396 U.S. 941, 90 S.Ct. 378, 24 L.Ed.2d 244 (1969).

**28.** *Mutual Fund Investors, Inc. v. Putnam Management Co.*, 553 F.2d 620 (9th Cir. 1977).

**29.** § 402A provides in relevant part that
 (1) [o]ne who sells any products in a defective condition unreasonably dangerous to the user or consumer or to his property is subject to liability for physical harm thereby caused to the ultimate user or consumer, or to his property, if
  (a) the seller is engaged in the business of selling such a product, and
  (b) it is expected to and does reach the user or consumer without substantial change in the condition in which it is sold.
 Pennsylvania specifically adopted this section of the Restatement in *Webb v. Zern*, 422 Pa. 424, 220 A.2d 853 (1966). *See also Cistone v. Ford Motor Co.*, 504 F.Supp. 328 (E.D. Pa.1980).
 In *Azzarello v. Black Brothers Co.*, 480 Pa. 547, 391 A.2d 1020 (1978), the Supreme Court of Pennsylvania held that the trial court committed reversible error by instructing the jury that a product had to be "unreasonably dangerous" for its supplier to be liable. *Accord, Bailey v. Atlas Powder Co.*, 602 F.2d 585 (3d Cir. 1979), *Baker v. Outboard Marine Corp.*, 595 F.2d 176 (3d Cir. 1979). The court premised its decision on the basis that the judge and not the trier of fact should determine whether a particular product is "unreasonably dangerous". The court therefore expanded the role of the

trial judge as distinguished from the trier of fact by characterizing as a question of law a fundamental issue which in the past had been decided by the factfinder. *Cf.* n. 58 and accompanying text.

**30.** *Compare Weinberger v. Hynson, Westcott & Dunning*, 412 U.S. 609, 93 S.Ct. 2469, 37 L.Ed.2d 207 (1973) *with Adickes v. S. H. Kress & Co., supra*, and *White Motor Co. v. United States*, 372 U.S. 253, 83 S.Ct. 696, 9 L.Ed.2d 738 (1963).

**31.** *Meuller v. Jeffrey Manufacturing Co.*, 494 F.Supp. 275, 277 (E.D.Pa.1980) affirmed (3rd Cir. 1981). *Cf. Armstrong Cork Co. v. Drott Manufacturing Co.*, 433 F.Supp. 413 (E.D. Pa.1977) and *Young v. Robertshaw Controls Co.*, 430 F.Supp. 1265 (E.D.Pa.1977) (granting summary judgment on the issue of products liability).

**32.** *See* n. 3.

**33.** *See* n. 3.

**34.** See the affidavits submitted by defendant's chief inspectors between 1961 and 1976 and the electrical department supervisor responsible for determining the layout of electrical wiring in the vehicles which defendant manufactured.

**35.** *Vizzini v. Ford Motor Co.*, 569 F.2d 754 (3d Cir. 1977). *See also Cornell Drilling Co. v. Ford Motor Co.*, 241 Pa.Super. 129, 359 A.2d 822 (1976).

**36.** *See* text accompanying n. 53 (plaintiff's proposed expert theorized that installation of a horn *could* have averted the accident) *but see also* text accompanying n. 69 (plaintiff's pro-

the scooptram traveling through the mine, "li[t] up like a Christmas tree" and made noises like a diesel truck, particularly when the scrubber was as dry as it was at the time of the accident. The driver emphasized that, immediately before the accident, he saw plaintiff's decedent, whose conduct indicated that he had seen and heard the approaching scooptram. At this point the two men stood less than several hundred feet apart. In accordance with mine safety procedures [37] the decedent turned to face the scooptram. The driver saw the light on the helmet worn by the decedent, who, he assumed, then stepped into the water drainage manway out of the path of the scooptram. The decedent had no known hearing or seeing problems.[38]

■ Consequently, the presence or absence of any audible or visual device, whose sole function would have been to alert the decedent that the scooptram was coming, could not have caused the accident because the decedent saw and heard the approaching scooptram.[39] No genuine issue exists as

posed expert was unable to conclude that installation of the horn *would* have prevented the accident.

37. Pursuant to the Federal Metal and Non-metallic Safety Act of 1966, 30 U.S.C. § 721 et seq., the Mining Enforcement & Safety Administration (MESA), now the Mining Safety & Health Administration (MSHA), promulgated safety regulations for underground mines. *See* 30 C.F.R. § 57.1 *et seq.*, which include

57.18–1. The employer should establish a definite effective program and continually functioning safety program and make every attempt to prevent accidents and increase safety. Employees should actively participate in the safety program.

57.18–2. Regular safety inspection should be made by company officials or safety committees. *Written reports should be made of the* findings and actions recommended or taken; this information should be made available to the employees.

57.18–3. Serious accidents, whether resulting in injury or not, should be investigated to determine the cause and the means of preventing recurrences. Records of these investigations should be kept and the information should be made available to the employees.

57.18–4. Company safety regulations pertinent to the various operations should be published or posted for employee information.

57.18–5. All employees and officials should be familiar with company, State, and Federal health and safety regulations applicable to their jobs.

57.19–5. Operators shall be certain, by signal or other means, that all persons are clear before starting or moving equipment.

In December 1975 defendant issued Mobile Equipment Safety Rules (Underground), which stated in part that

[t]he following [Rules] were developed for your protection and safety. Every employee should know and follow the rules applicable to his work assignments. If you do not understand a rule in this book, request your supervisor to explain any such rule to you.

■ Vehicles shall not be moved until operator is certain that all personnel are in the clear.

■ When approaching pedestrians *all* vehicles shall come to a complete stop until pedestrians have passed.

38. Hartz Deposition at 23, 33, 37–39, 40–43.

39. Interestingly, all three reports issued following investigations of the accident did not conclude that the scooptram itself caused the accident. The report of the Commonwealth of Pennsylvania's Department of Environmental Resources, Division of Mine Safety, found that failure to follow company practice caused the accident: Plaintiff's decedent failed to tell either his partner or the scooptram operator that he was going down the drift. The MESA report attributed the accident to the lack of communication between the scooptram operator, the helper and plaintiff's decedent as well as the operator's loss of visual contact with plaintiff's decedent and the assumption that he went to a safe area away from the path of the unit.

The employer's report of the accident included the following recommendations:

1. All persons walking the travelways of mobile equipment shall walk on the same side of the travelway as the operator's position on the moving equipment.

2. All employees, on foot, shall use the adopted systems of communication to indicate their exact location to operators of mobile equipment. Management shall investigate the feasibility of installing a suitable audible warning device on mobile equipment for use by operators to warn all persons of start-up and movement in areas where an operator's visibility is limited to the extent that he cannot reasonably be expected to observe workers in the area, e.g., curves and grades of runways.

3. Each person entering an underground mine shall have at least six square inches of reflective tape or its equivalent on each side and on the back of his protective hat or cap.

to this material fact, and plaintiff has not pointed to any evidence indicating the existence of a triable issue of material fact. Plaintiff cannot rely on evidence "by way of innuendo" or "possibilities" that the operator would have used a horn.[40] Accordingly, defendant's motion for summary judgment will be granted.[41]

■ Alternatively, even if the absence of an audible warning device caused the scooptram to be in a defective and unreasonably dangerous condition causing the accident, plaintiff has not demonstrated sufficient evidence to create a genuine issue as to a material fact that the scooptram had been changed substantially subsequent to defendant's sale. To prevail under Section 402A, plaintiff must prove, *inter alia*, that the scooptram reached plaintiff's decedent "without substantial change in the condition in which it was sold".[42] Initially defendant has the burden of coming forward with evidence indicating that a substantial change occurred in the condition in which it sold the scooptram.[43] Affidavits submitted by defendant established that the scooptram had an operable horn at the time defendant sold it but that the horn had been removed sometime prior to the acci-

dent.[44] The scooptram was also equipped with four headlights, two of which had been removed by the time of the accident.[45]

■ With this demonstration the burden shifted to plaintiff to show by a preponderance of the evidence that no such substantial change occurred[46] because plaintiff's failure "to negate substantial changes is the same as saying that [she] failed to negate the break in the causal connection between the original defect and the ultimate injury".[47] Defining "substantial change", one court considered the language to require "some causal connection with the accident".[48] Deposition testimony indicated that the scooptram had an operable electric horn at the time of sale and that sometime during the seven and one-half years between the date of sale and accident the horn had been removed.[49] Interestingly, the MESA report stated that the accident had been caused by the scooptram operator's loss of

> visual contact with [a] man talking or standing in a haulage draft and assuming that he went into a safe area, away from the path of the [scooptram] unit. A contributory factor was the lack of communication between the [scooptram] operator

---

40. See Plaintiff's Brief in Opposition at 7 and 12. Although inference may create a genuine issue of material fact, *Adickes v. S. H. Kress & Co., supra, United States v. Diebold, supra*, the kind of inference that does so is one resulting from

> a process of reasoning by which a factor properly sought to be established ... is deduced as a logical consequence from other facts, or a stated fact, already proved or admitted ... An inference is not a supposition or a conjecture but is a logical deduction from facts proved and guesswork is not a substitute therefor.

*Greiner v. Volkswagenwerk Aktiengesellschaft*, 429 F.Supp. 495, 498 (E.D.Pa.1977), *quoting Commonwealth v. Whitman*, 199 Pa.Super. 631, 634, 186 A.2d 632, 633 (1962) and *Mitchell v. Machinery Center, Inc.*, 297 F.2d 883, 885 (10th Cir. 1961). Plaintiff may not, however, rely on innuendos and possibilities to create a genuine issue of material fact. *See* text accompanying 18 ff.

41. *See Meuller v. Jeffrey Manufacturing Co., supra.*

42. § 402A(1)(b).

43. *Hanlon v. Cyril Bath Co.*, 541 F.2d 343 (3d Cir. 1975); *Southwire Co. v. Beloit Eastern Corp.*, 370 F.Supp. 842 (E.D.Pa.1974).

44. Plaintiff admits she cannot refute defendant's assertion. See Plaintiff's Brief at 2.

45. See Weik Deposition at 53, Hartz Deposition at 16 and 25, the affidavits described in n. 34 and plaintiff's answers to defendant's interrogatories, 8 and 11.

46. *Hanlon v. Cyril Bath Co., supra; Southwire Co. v. Beloit Eastern Corp., supra.*

47. *Southwire Co. v. Beloit Eastern Corp.*, 370 F.Supp. at 857.

48. *Dennis v. Ford Motor Co.*, 332 F.Supp. 901 (W.D.Pa.1971), *aff'd*, 471 F.2d 733 (3d Cir. 1973).

49. *See* n. 34.

and the secondary driller and blaster and his help . . . [50]

This report recommended that the units carry audible warning devices, such as horns, to be used in areas of restricted visibility. Similarly, the employer's mine report advised examination of the feasibility "of installing equipment for use by operators to warn all persons of start-up and movement in areas where an operator's visibility is limited to the extent that he cannot reasonably be expected to observe workers in the area".[51] The scooptram driver testified that he saw plaintiff's decedent several hundred feet in front of him with ample opportunity to blow a horn if one had been mounted on the vehicle at the time.[52] Even plaintiff's proferred expert agreed that use of the type of horn originally installed on the unit could have averted the accident.[53] Under the circumstances of this accident, particularly in light of plaintiff's ultimate theory of liability, removal of the horn

"substantially changed" the scooptram within the meaning of Section 402A.[54]

In *Schreffler v. Birdsboro Corp.*[55] a load of hot steel pushed plaintiff against a machine with which he was working. Plaintiff had been standing on a "transfer table" fastening chains around a load of steel in anticipation of a crane removing the steel. The transfer table, manufactured by the defendant, consisted originally of a series of parallel rails with openings between them. The employer, however, had added steel plates between the rails to enable workers to walk between the rails and remove steel. Safety experts had recommended installation of emergency apparatus to prevent steel from continuing to roll on the machine if a worker appeared in the vicinity. The trial court granted a directed verdict in favor of defendant.[56] Affirming, the Court of Appeals held that

[i]ndisputably, after the defendant relinquished control, the table was so substan-

---

**50.** *See* n. 39.

**51.** *See* Defendant's Deposition Exhibit 1.

**52.** *See* Hartz Deposition at 39–40:

Q. Now, did I understand your testimony or what you said before, correctly that you saw [the decedent] go into the manway opposite the number one entry?

A. [by the scooptram operator] Right.

Q. You said that you saw his light when he went in there?

A. Before he got there, he looked back. Then, he started walking and went in the manway on the right-hand side.

**53.** At depositions the following interchange occurred between plaintiff's expert and defense counsel:

Q. Well, let us assume that at some point, several hundred feet from the point of impact, the driver had seen a person in the passageway, whoever, whether he knew it was [the decedent] or someone else, then proceeded down the passageway instead of turning off where he had been, was going to go straight ahead and came to a point when, because of the configuration of the shaft, his headlights would not illuminate somebody in front of him and at a point had blown the horn, in your opinion, might [the decedent] gotten out of the way, assuming he was physically capable of doing so and was not otherwise deep in thought?

A. If you assume all those things and he heard the horn beeping at him, sure, he would get out of the way or would turn around and signal him.

**54.** *Cf. Speyer v. Humble Oil & Refining Co.*, 403 F.2d 766 (3d Cir. 1968) *cert. denied,* 394 U.S. 1015, 89 S.Ct. 1634, 23 L.Ed.2d 41 (1969) (change in gas pump hose constituted a substantial change in condition).

**55.** 490 F.2d 1148 (3d Cir. 1974).

**56.** *Summary judgment may be granted on evidence that would compel direction of a verdict and should be denied where one would not be proper. See Sartor v. Arkansas Natural Gas Corp.*, 321 U.S. 620, 64 S.Ct. 724, 88 L.Ed. 967 (1944) and *Cousins v. Yeager*, 394 F.Supp. 595 (E.D.Pa.1975). The proper inquiry is whether there is any evidence upon which a jury could properly find for plaintiff. *Patzig v. O'Neil*, 577 F.2d 841 (3d Cir. 1978). If reasonable persons could reach different conclusions, the question of liability should be submitted to the jury. *Silverii v. Kramer*, 314 F.2d 407 (3d Cir. 1963). In the case at bar a jury could not find properly that the scooptram remained in substantially the same condition as on the date of sale. Plaintiff admits that parts of the warning system, to which plaintiff attributes the blame for the tragedy, had been removed subsequent to the sale of the machine. If, as plaintiff contends, the lack of an adequate warning device caused the accident, then removal of parts of it perforce substantially changed the scooptram. *See Onuffer v. Seven Springs Farm, Inc.*, 636 F.2d 46 (3d Cir. 1980).

tially modified that it was then feasible to use the equipment in a manner different from that which would have been expected from observation of the original design ... Thus the plaintiff failed to prove a critical prerequisite that the product was in the same condition, so far as was relevant, on the date of the accident as it was at the time [the employer] acquired possession.[57]

The court, also indicating that plaintiff had failed to show that the defendant's conduct regarding the alleged product proximately caused the accident, emphasized that such an issue generally lies with the jury but that the trial court should rule on the issues of proximate cause and substantial change.[58]

In *Hanlon v. Cyril Bath Co.*[59] the plaintiff alleged that the manufacturer of a press brake was liable to him for injuries he suffered when he accidentally activated the press brake while attempting to remove a piece of metal that had become stuck in the press, which originally had been equipped with a manual starting mechanism consisting of a foot pedal requiring the operator to lift his foot a considerable distance and then to exert approximately sixty-five pounds of pressure to activate the machine. Plaintiff's employer replaced this manual mechanism with an easily operated electric foot switch similar to a dictaphone foot pedal. Inadvertently, plaintiff stepped on the electrical switch while his hand was in the press, which severed several of his fingers. Plaintiff alleged that the press was defective at the time it was sold by the defendant because it lacked a safety device to prevent the machine from being activated while the operator's hand was in the machine. The Court of Appeals, sustaining a jury verdict in defendant's favor, noted

that "in relation to danger of accidental activation, this substitution of a significantly different and much more sensitive starting mechanism was a substantial change in which [the press brake] was sold within the meaning of Section 402A".[60] The court further held that defendant was entitled to a directed verdict because undisputed evidence established the substantially changed condition of the allegedly defective machine.[61]

In the case at bar, subsequent to the sale of the scooptram the horn was removed and not replaced by any other warning device. The parties do not dispute this fact.[62] In view of the circumstances surrounding the accident and the state of the present record, the removal of the horn substantially changed the condition of the scooptram. Defendant has met successfully the threshold burden of its motion;[63] plaintiff has not met hers. Plaintiff responds with the contention that the scooptram should have been equipped with an automatic warning device operating independently of the driver. However, whether such a device would have been feasible and if so, would have averted this tragedy comprise suspicions or hypothetical possibilities which will not create a genuine issue as to this material fact,[64] particularly where the record does not support plaintiff's argument.

For example, plaintiff has not demonstrated how such a device would operate. Her proposed expert testified at his deposition that such a device would operate independently of the operator whenever there was a blind spot. However, he conceded that there was always a blind spot on the scooptram.[65] This expert also confessed that he did not know how such a device could be designed.[66] Assuming for the mo-

---

**57.**  490 F.2d at 1153.

**58.**  490 F.2d at 1156.

**59.**  *See* n. 43.

**60.**  541 F.2d at 345.

**61.**  541 F.2d at 346.

**62.**  *See* n. 34 and n. 44.

**63.**  *See* n. 15.

**64.**  *See* n. 18ff.

**65.**  *See* Barbe Deposition at 23.

**66.**  When asked by defense counsel how such a device would be designed and whether the device would sound continuously whenever the vehicle moved, plaintiff's proposed expert replied:

ment that he would qualify as an expert,[67] his unsupported conclusions will not create a genuine issue as to any material fact.[68] More importantly, this same expert acknowledged that even if an automatically activated audible device operating independently of the driver were practicable, and even if the scooptram had been equipped therewith, he could not conclude that the accident would have been prevented by installation of one.[69] In short, plaintiff has not produced any evidence suggesting the feasibility of designing an automatic warning device, whether it would have had any positive effect, and whether the use of this device would have prevented the instant accident.[70] Accordingly, defendant's motion for summary judgment will be granted.

I don't know. I can't answer that.
I am talking not about a design criteria. I am talking about a performance criteria and I think, really, you're speaking to the design criteria.
I am just saying, from a performance criteria, these are minimum safety standards in my opinion.

67. The testimony of plaintiff's expert may not be admissible since the Magistrate's discovery order restricted plaintiff to a single alleged defect—"the absence of either an audible or visual warning device with which to warn other workers of the approach of said unit". For present purposes, the admissibility of this testimony is assumed.

68. *Merit Motors, Inc. v. Chrysler Corp.*, 569 F.2d 666 (D.C.Cir.1977)

69. At depositions the following exchange occurred between plaintiff's proposed expert and defense counsel:
Q. And there was no assurance that had this vehicle been equipped with the types of devices, which you have stated, that those would have cautioned him to do something different than what he did, assuming that he had the physical capacity to do what he did?

A. That is correct. All I base my judgment on is a reasonable certainty and that means I can't . . .
Q. How do you have a reasonable certainty about that?
A. Because based upon my knowledge and work that I've done in the field, these alarms really work and people do pay attention to them.
Q. I take it you would have to concede that there are times when they don't?
A. What you just illustrated: a man could have been very deep in thought . . .
Barbe Deposition at 23.

70. *See* n. 66 and n. 79. Typically, the question of substantial change properly lies with the jury. *Merriweather v. E. W. Bliss & Co.*, 636 F.2d 42 (3d Cir. 1980). However, "where the inferences are so clear that a court can say as a matter of law that a reasonable manufacturer could not have foreseen the change" the court may resolve the issue. *D'Antona v. Hampton Grinding Wheel Co.*, 225 Pa.Super. 120, 125, 310 A.2d 307, 310 (1973). In the case at bar, plaintiff has failed to produce evidence showing that no substantial change occurred. The inferences therefrom are "clear".